# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 25, 2012

## STATE OF TENNESSEE v. LISA FAYE ALLISON

**Direct Appeal from the Circuit Court for Monroe County**
**No. 10290     Carroll Ross, Judge**

_____

**No. E2011-02057-CCA-R3-CD - Filed June 15, 2012**

_____

The Defendant, Lisa Faye Allison, pled guilty, pro se, to one count of promoting the manufacture of methamphetamine and one count of possessing less than 0.5 ounces of marijuana. The trial court sentenced the Defendant to an effective sentence of three years, to be served on probation. The Defendant's probation officer filed a probation violation warrant alleging that she had violated the terms of her probation. After a hearing, the trial court revoked the Defendant's probation and ordered that she serve her sentence in confinement. On appeal, the Defendant contends that the trial court erred when it denied her request to apply for the community corrections program, improperly basing the denial on her decision to exercise her right to a hearing on the issue of whether she violated her probation. She further contends that the trial court erred because it denied her community corrections request without holding a hearing on her eligibility. After reviewing the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, Jr., J., joined. JERRY L. SMITH, J., not participating.

Chessia Cox, Assistant District Public Defender, Madisonville, Tennessee, for the appellant, Lisa Faye Allison.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Steven Bebb, District Attorney General; and James H. Stutts, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# I. Facts and Background

A Monroe County grand jury indicted the Defendant on charges of promoting the manufacture of methamphetamine and possessing less than 0.5 ounces of marijuana. The Defendant, representing herself, pled guilty to both counts. The trial court sentenced the Defendant to three years for the promoting the manufacture of methamphetamine conviction and to eleven months and twenty-nine days for the possession of marijuana conviction. The trial court ordered that the sentences run concurrently and be served on probation.

On May 13, 2011, the trial court issued a probation violation warrant based upon the sworn statement of the Defendant's probation officer that the Defendant had violated her probation. The Defendant's probation officer alleged that the Defendant had violated the terms of her probation by: being criminally charged for harassment; failure to report to her probation officer that she had been charged with harassment; failing a drug screen; failure to pay court costs; and engaging in "assaultive, abusive, threatening, or intimidating" behavior for her actions upon which the harassment charge was based.

The trial court held a hearing during which the following evidence was presented: Danny Isbill, the Defendant's probation officer, testified that the Defendant's probation began on September 20, 2010. Officer Isbill testified that he filed a probation violation warrant because the Defendant had tested positive for marijuana, had not provided proof of paying court costs, had a new charge, and had failed to report her new charge to him. The officer said he had since learned that the Defendant had paid her court costs but that she had never provided him proof of payment.

About the Defendant's positive drug screen, Officer Isbill testified that he was unsure whether a lab ever independently verified that the Defendant had used drugs. Rather, on April 26, the Defendant admitted to an officer that she had used marijuana.

On cross-examination, Officer Isbill testified that the Defendant had provided him addresses of where she was living throughout the duration of his supervision. He said, however, she had never had provided him a working phone number. The officer said that the Defendant had successfully undergone her required DNA test and that she had not been charged with any other offenses, besides the harassment charge.

The trial court indicated on the record that the Defendant had lost a significant amount of weight and that a new photograph needed to be taken and entered into her file.

The Defendant testified and addressed the trial court's inquiry into her weight loss, saying that she suffered from extremely dangerous asthma and had been sick since September

of the previous year. She said that she had only left the house where she was staying to go to her probation meetings and to pay her court costs. The Defendant testified that her illness was to blame for her difficulty in meeting with her probation officer.

The Defendant described the incident that led to her harassment arrest. She said that her mail had been withheld from her since she had been released for her convictions. The Defendant asserted that the mail man improperly withheld her mail and that she "took actions with a hot temper, and pleading with the U.S. mail carrier to deliver my mail, my U.S. mail, and it was not done." The Defendant said her harassment charge had been dismissed. She agreed that she never informed her probation officer of the charge.

The Defendant said that, at the time of the hearing, she resided in a "Winnebago," which she described as a "motor home on wheels" that was parked on the property of Donnie McDaniel and his wife. McDaniel and his wife helped her purchase the Winnebago, and the two took care of her when she was sick. The Defendant said she had been making the payments for her court costs, but she agreed she had not provided receipts of the payments to her probation officer.

On cross-examination, the Defendant testified that her probation officer had visited her twice when she lived on Creek Road. Because she did not have any transportation, she moved in with the McDaniels. She said she provided her probation officer the McDaniels's address.

In reference to the harassment charge, the Defendant agreed that she left notes in her mailbox and the notes did not just say "Would you please send my mail?". When asked what the notes said, the Defendant was evasive in providing her response. She was asked, "Did one of [the notes] threaten to take [the postal carrier's] life?" The Defendant responded, "I believe these charges have been dropped from harassment, so therefore . . . ." The trial court then asked, "Did you or did you not write a note threatening the postal carrier?" The Defendant responded, "I presume not. I believe, to my recollection, it was asking for my mail to be placed in my U.S. box . . . ."

On redirect examination, the Defendant said her probation officer never discussed drug treatment with her after she tested positive for marijuana. She said she suffered from lung cancer as a child, and she was uncertain whether she still suffered from cancer.

Based upon this, the trial court revoked the Defendant's probation, finding:

[F]or the record, I think the State has clearly shown it's, it's proved its case here today. I do not think you're amenable to any further treatment in the Department of Probation.

For the record as well, your answers here, not only to the State's questions but to your own counsel's questions here today were, quite frankly, evasive. And, and . . . . it's just hard for me to try to recommend your staying on probation when I see that kind of attitude. I still don't know whether you've got cancer right now. I'm not for sure your attorney knows. Everybody gave you an opportunity, and you keep saying, "Well it felt like it," or something like that.

For the record as well, the difference from the photograph on your warrant and the one that will be filed by Mr. Isbill is considerably different, and appears, based on my own experience in dealing with people in court that have been on repeated drugs, to be a reflection of repeated drug use. That's one of the reasons you have to make [it to] appointment[s] on time, and it's also one of the reasons consistently people refuse to come on time, show up a week or so later in an effort to try to avoid drug screens being positive if they are given one when they are there. You don't have a choice on when to show up. You're told by the probation officer. That's why it's called probation. You have to be there when you're told to be there. You did fail or at least admit to . . . use of drugs when they asked you to take a random drug screen on the designated date. You failed to report the arrest. On questioning by the State on what the charges were that arose out of that arrest warrant with the postal office, you were very evasive, would not respond, which indicates to me there was far more to it than you had indicated.

General, for the record as well, though, I wish the State had either had that postal worker here or copies of those document the State asked her about. I mean, she denies she made them, and at this point, there's no proof to the contrary. But I do find her answers very evasive on that as far as what happened for her to get charged in that warrant. But I do find the totality of the circumstances show that she is not amenable to further treatment in the Department of Probation. I revoke her probation and commit her to the Tennessee Department of Correction to serve the balance of her term.

The Defendant's attorney then asked for the opportunity for the Defendant to apply to the community corrections program. The trial court denied her request, saying that the Defendant could have pled guilty to violating her probation and applied to community

corrections by agreement. The trial court reminded her that the State had offered her this opportunity but that she had denied their offer. The trial court then denied the Defendant's request "based on what [it] hear[d]" at the hearing." The trial court stated, "She couldn't comply with these rules. She has no place to stay. She has no place to live. All of those things are important . . . for the Community Corrections program."

On September 19, 2011, the Defendant filed a motion, asking the trial court to reconsider its ruling and to allow her to apply for the community corrections program. The trial court denied the motion.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied her request to apply for the community corrections program on the basis of her decision to exercise her right to a hearing on the issue of whether she violated her probation. She further contends that the trial court erred because it denied her community corrections request without holding a hearing on her eligibility.

In Tennessee, the procedure for revocation of probation is covered in Tennessee Code Annotated section 40-35-311. The statute provides as follows:

> Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case. Regardless of whether the defendant is on probation for a misdemeanor or a felony, or whether the warrant is issued by a general sessions court judge or the judge of a court of record, such warrant may be executed by a probation officer or any peace officer of the county in which the probationer is found.

T.C.A. § 40-35-311(a) (2010).

The essential question facing the trial court in a probation revocation proceeding is whether the court's determination will subserve the ends of justice and the best interest of both the public and the probationer. *See Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956). When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke

probation. T .C.A. § 40-35-311(e) (2010). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. §§ 40-35-308, -310, -311 (2010). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e)(2) (2010). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." T.C.A. § 40-35-311(e)(1) (2010); *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement). Furthermore, when probation is revoked, the trial court may order "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension . . . ." T.C.A. § 40-35-310(a) (2010).

Because Tennessee law permits the trial court to revoke probation only upon finding, by preponderance of the evidence, that the defendant has violated the terms of his or her probation, this Court will not disturb the trial court's determination absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011), *perm. app. denied* (Tenn. Oct. 18, 2011); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). A finding of abuse of discretion "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the case presently before us, the Defendant does not contest that she violated the terms of her probation by: using marijuana on at least on occasion; being charged with harassment; and failing to report her harassment charge to her probation officer. As previously stated, upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and order incarceration. *See Hunter*, 1 S.W.3d at 644. The trial court did not abuse its discretion when it ordered the Defendant to serve the remainder of her sentence in confinement.

As to the Defendant's contentions regarding her request for community corrections, we first note that the trial court made its determination based upon the fact that the Defendant had not successfully complied with the rules of probation and that she did not have a place to live. The trial court did consider that the State had offered to agree to a community corrections sentence if the Defendant pled guilty to violating her probation, but this was not the sole factor upon which the trial court based its decision. The Defendant cites no authority, and this Court is not aware of any authority, to support the proposition that, after

a trial court finds that a Defendant violated his or her probation, the trial court must then conduct a second hearing to determine that defendant's eligibility for community corrections. To the contrary, upon a finding that a defendant violated his or her probation, a trial court may properly sentence that defendant to incarceration. We conclude that the Defendant's contention is without merit, and she is not entitled to relief on this issue.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE