# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 25, 2012

## STATE OF TENNESSEE v. CHESTER CARR PETERSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-A-523     Steve Dozier, Judge**

---

**No. M2011-02241-CCA-R3-CD - Filed September 5, 2012**

---

The Defendant, Chester Carr Peterson, pled guilty to possession with intent to sell less than .5 grams of cocaine and evading arrest.  The trial court sentenced the Defendant to a sentence that included community corrections.  The Defendant's community corrections officer filed a violation warrant, and, after a hearing, the trial court revoked the Defendant's community corrections sentence, finding that he had violated the terms of his sentence, and ordered him to serve the remainder of his sentence in confinement.  On appeal, the Defendant contends that the trial court erred by revoking his community corrections sentence and ordering him to serve the balance of his sentence in prison.  After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

Emma Rae Tennent (on appeal) and Jonathan Wing (at trial), Nashville, Tennessee, for the appellant, Chester Carr Peterson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts
#### A. Guilty Plea and Sentencing Hearings

This case arises from the Defendant's involvement in a sale of crack cocaine to an undercover police officer. At the guilty plea submission hearing, the Defendant entered guilty pleas to two offenses: selling less than .5 grams of cocaine, a Class C felony, and evading arrest, a Class A misdemeanor. At the hearing, the State recited the facts underlying the Defendant's convictions:

> Had his case gone to trial, the State's proof would have shown that on September 5th, 2008[,] the [D]efendant flagged down Detective Atcknic of the Metro Police Department as he drove along Lewis Street. After he pulled over, the [D]efendant asked him what he was looking for. Detective [asked] the [D]efendant what he had in terms of money -- or asked the [D]efendant what he had. The [D]efendant responded that he had hard, referring to [the] hard form of crack cocaine. The detective told the [D]efendant, I want a $20 and asked if it was good. The [D]efendant replied that it was. He then asked the [D]efendant if he would smoke it, but the [D]efendant stated that he doesn't smoke crack.

> The detective told the [D]efendant that he would circle the block. He then pulled away and told another detective to standby and wait for the take-down signal. Detective returned to the [D]efendant and asked him if he had change [for] a $50 to which the [D]efendant said no. At that time[,] he offered to sell $50 worth of crack. The [D]efendant . . . walked over to a newspaper stand, removed something from the top of it, walked back to the detective and sold him three rocks of crack cocaine for $50.

> At that time[,] the take-down signal was given and the [D]efendant walked away. As the police went to arrest him, he fled from the officer[s] on foot. This foot chase went through JC Nappier [sic] Housing Development and back toward where the transaction took place. During the chase, the [D]efendant discarded his jacket. . . . [When the detective] caught the [Defendant][,] . . . the [D]efendant had the $50 bill, which was the buy money, in his mouth.

Per the plea agreement, the Defendant agreed to be sentenced as a career offender with a sixty percent release eligibility, and the trial court imposed a ten-year sentence, to be served at sixty percent, for the drug offense. The trial court imposed an eleven-month and twenty-nine-day sentence for evading arrest, to be served concurrently to the drug offense.

At the sentencing hearing, the trial court ordered that the Defendant serve a sentence of split confinement, with one year of incarceration followed by nine years on community corrections.

## B. Probation Violation Hearing

The Defendant's community corrections officer filed a probation violation warrant alleging that the Defendant violated the terms of his community corrections program because he was arrested for the theft of a vehicle. At the hearing, the parties presented the following evidence: Lakedra Smith, a friend of the Defendant's family, testified that on July 23, 2011, she allowed the Defendant to borrow her vehicle in order to go to his job cutting grass for a lawn business. Smith stated that, when she gave the Defendant permission to borrow her vehicle, she told him to return it the following day. The Defendant, however, never returned her vehicle, so, three days later, she filed a stolen vehicle report with the police department. Smith testified that the vehicle was equipped with a GPS system, and, after she filed the report, the vehicle was located in front of a warehouse in Shelby Park. She stated that her vehicle was a 2004 Ford Explorer, and it had an estimated value of $10,000. She testified that, at the time her vehicle was recovered, it had damage to the back bumper that had not been present when Smith loaned the vehicle to the Defendant. Smith further stated that items that she had left in the vehicle, including a cell phone, an I-pod, shoes, a weed-eater, and two folding lawn chairs, were missing when it was recovered. Smith testified that she never recovered those items and that she did not give the Defendant permission to take those items.

On cross-examination, Smith admitted that, while the Defendant had her vehicle, she received a text message from him that included the word "Mississippi," but she stated that she did not understand the meaning of the message.

Michelle Castile, a case officer with the Davidson County Community Corrections program, testified that she was assigned to supervise the Defendant. Castile stated that she requested a violation warrant against the Defendant. After the Defendant had been arrested on the violation warrant, Castile spoke with him, and the Defendant admitted to her that he had not been living at his court-ordered address. Castile stated that the Defendant had, instead, been living at the Hallmark Inn where he had paid for a month's stay in advance. Castile testified that, regarding the Defendant's arrest for theft of a vehicle, the Defendant explained that the incident was the result of a "family argument[]." Castile stated that the Defendant told her that he had left his court-ordered residence due to family problems and arguments.

On cross-examination, Castile agreed that the Defendant suffered from "mental

health difficulties." She stated that, since the time he entered into the community corrections program, the Defendant "reported several times," and she "met with him twice prior to this arrest." Castile agreed that, during those meetings, the Defendant resided at the court-ordered residence.

On redirect examination, Castile stated that the terms of the Defendant's community corrections sentence required him to receive permission to change residences. She testified that she would "never, ever let him move into the Hallmark Inn . . . ."

The Defendant testified that the terms of his community corrections sentence required him to reside with Lakedra Smith. He, however, moved out of her home and into the Hallmark Inn because he grew "tired of being a mule, for her and her family." The Defendant complained that he had to drive Smith and her children "everywhere," and he "got tired of seeing [Smith and her boyfriend] argue all the time." He stated that he became "pissed off," so he "took the truck to Shelby Park" to do some "thinking" and "left it there." The Defendant alleged that Smith liked to "shoplift," and he was not "with that." The Defendant then stated that he told Smith through a text message that he was "thinking about going to Mississippi" with her vehicle.

Regarding his court-ordered residence, the Defendant acknowledged that he moved from that residence without Castile's permission. The Defendant stated that he later told Castile that he moved because he did not "want to get [himself] in trouble." The Defendant testified that, if given the opportunity, he would be more responsible on community corrections.

On cross-examination, the Defendant stated that he "did everything [he] was supposed to" on community corrections. The Defendant, however, agreed that he stopped reporting to Castile for two weeks and had admitted to her that he used marijuana. The Defendant denied that, during a previous revocation hearing, he admitted to using crack cocaine. The Defendant maintained that he was "not doing nothing wrong."

After the Defendant's testimony, the trial court found that the Defendant violated his probation "based on the new arrest and moving from the place he was court ordered to be at." After taking the matter under advisement, the trial court issued an order reinstating the Defendant's original sentence. In the order, the trial court noted that this violation was the Defendant's second and that he "was unable to comply with the terms of the community corrections for even thirty days after his release." The trial court found that the "[D]efendant has not demonstrated an ability to comply with the terms of release" and ordered the Defendant to serve the remainder of his ten-year sentence in confinement. It is from this judgment that the Defendant now appeals.

-4-

## II. Analysis

The Defendant contends that the trial court erred when it revoked his community corrections sentence and reinstated his original sentence. The State responds that the trial court properly revoked the Defendant's community corrections sentence and ordered that he serve his ten-year sentence. We agree with the State.

A trial court may revoke a defendant's community corrections sentence based on the defendant's non-compliance with the conditions of the community-based program. T.C.A. § 40-36-106(e)(3)-(4) (2010). The trial court must hold a probation revocation proceeding, during which "the trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." T.C.A. § 40-35-311(d) (2010); *see State v. Hill*, 987 S.W.2d 867, 870-71 (Tenn. Crim. App. 1998) (If the defendant already began serving his sentence, the trial judge could only revoke a community corrections sentence with a proper revocation hearing and proper notice.). During the proceeding, the trial court must find proof of a community corrections violation by a preponderance of the evidence, and either:

> (A) Cause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with § 40-35-310; or

> (B) Resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense.

T.C.A. § 40-35-311(e) (2010). Because Tennessee law permits the trial court to revoke probation only upon finding, by preponderance of the evidence, that the defendant has violated the terms of his or her probation, this Court will not disturb the trial court's determination absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011), *perm. app. denied* (Tenn. Oct. 18, 2011); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007); *see also State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980) (adopting the probations violation standard for a community corrections program violation due to the sentences' similar nature). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). We note that "'[o]nly one basis for revocation is necessary,'" and a defendant's admission to a violation of the

conditions of release to the community corrections program is sufficient evidence for such a revocation. *State v. Joe Allen Brown*, No. W2007-00693-CCA-R3-CD, 2007 WL 4462990, at *4 (Tenn. Crim. App., at Jackson, Dec. 20, 2007), *no Tenn. R. App. P. 11 application filed* (quoting *State v. Alonzo Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App., at Knoxville, Oct. 5, 2001), *no Tenn. R. App. P. 11 application filed*)); *see also State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (holding that a defendant's concession of an act constituting violation of probation constitutes substantial evidence of violation, and the trial court's revocation based thereon is not abuse of discretion).

If the trial court revokes the defendant's community corrections sentence, then, as mentioned above, it may "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in the community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4) (2010). Our Supreme Court has previously stated that "the sentencing of a defendant to a community based alternative to incarceration is not final, but is designed to provide a flexible alternative that can be of benefit both to the defendant and to society." *State v. Griffith*, 787 S.W.2d 340, 342 (Tenn. 1990). Moreover, a "defendant sentenced under the [Community Corrections Act] has no legitimate expectation of finality in the severity of the sentence, but is placed on notice by the Act itself that upon revocation of the sentence due to the conduct of the defendant, a greater sentence may be imposed." *Id*. If the trial court chooses to resentence a defendant to a more severe sentence, however, it may only do so after conducting a new sentencing hearing in accordance with the Sentencing Act of 1989. *State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). The trial court may not arbitrarily increase the length of the sentence and must state on the record the reasons for the new sentence. *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996).

In the present case, the record supports the trial court's finding that the Defendant violated the terms of his community corrections sentence. Smith testified that she gave the Defendant permission to borrow her car, but he failed to return it. When Smith recovered the car, she discovered that the back bumper was damaged and several items were missing from inside the vehicle. Castile testified that the Defendant neither sought nor received her permission to move to a different residence. She stated that she would "never, ever" allow the Defendant to move to the Hallmark Inn motel for his residence. Further, the Defendant admitted that, because he was "pissed off" at Smith and her boyfriend, he "took the truck to Shelby Park" to do some "thinking" and "left it there." The Defendant later stated that he sent Smith a text message, informing her that he was "thinking about going to Mississippi" with her vehicle. The Defendant also acknowledged other violations, including his failure to report to his probation officer and

his use of marijuana. Lastly, the Defendant had previously violated his community corrections sentence, making this incident his second violation. Accordingly, the evidence supports the trial court's finding that the Defendant could not comply with the terms and conditions of his release. As such, we conclude that the trial court's revocation of the Defendant's community corrections sentence was not an abuse of discretion.

In his argument, the Defendant contends that the "primary purpose of a sentence of probation is rehabilitation of the defendant," and, considering his mental health issues, he has a "record of substantial compliance with the demands of the community corrections program." A defendant's "substantial compliance" with the terms and conditions of a community corrections sentence is not the correct standard by which a trial court should determine the outcome of a revocation proceeding. We note that a trial court may revoke a defendant's community corrections sentence upon a finding that a defendant *failed to comply* with the conditions of the community-based program. T.C.A. § 40-36-106(e)(3)-(4) (2010) (emphasis added). Further, "'[o]nly one basis for revocation is necessary,'" and a defendant's admission to a violation of the conditions of release to the community corrections program is sufficient evidence for such a revocation. *State v. Joe Allen Brown*, No. W2007-00693-CCA-R3-CD, 2007 WL 4462990, at *4 (Tenn. Crim. App., at Jackson, Dec. 20, 2007), *no Tenn. R. App. P. 11 application filed* (quoting *State v. Alonzo Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App., at Knoxville, Oct. 5, 2001), *no Tenn. R. App. P. 11 application filed*)). The Defendant in this case admitted that he changed residences without permission from Castile, he failed to report to Castile, he used marijuana, and, because he was frustrated with his living situation, he took Smith's vehicle and failed to return it to her. Therefore, we find that the trial court appropriately ordered the Defendant to serve the remainder of his original sentence in confinement. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

Based on the foregoing reasoning and authorities, we conclude that the trial court properly revoked the Defendant's community corrections sentence and ordered the remainder of the sentence to be served in confinement. As such, we affirm the judgment of the trial court. We, however, remand to the trial court for the correction of a clerical error on the judgment form. The judgment form should be amended to reflect that the Defendant's offender's "Offender Status" is "Career" rather than "Multiple."

_____
ROBERT W. WEDEMEYER, JUDGE