# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Opinion on Remand from the Supreme Court of Tennessee

## STATE OF TENNESSEE v. JAMES EDWARD FARRAR, JR.

**Appeal from the Circuit Court for Bedford County**
**No. 16183      Lee Russell, Judge**

**No. M2011-00838-CCA-RM-CD - Filed June 30, 2011**

The defendant, James Edward Farrar, Jr., appealed the Bedford County Circuit Court's revocation of his probation. This court reversed the trial court's revocation, concluding that the State failed to establish a violation of probation by a preponderance of the evidence and that the trial court abused its discretion by revoking probation. *See State v. James Edward Farrar, Jr.*, No. M2009-01285-CCA-R3-CD, slip op. 6 (Tenn. Crim. App., Nashville, Sept. 10, 2010). The State filed an application for permission to appeal to our supreme court. On April 14, 2011, the supreme court granted the State's application and remanded the case to this court for reconsideration in light of the supreme court's recent decision in *State v. Teddy Ray Mitchell*, ___ S.W.3d ___, No. E2008-02672-SC-R11-CD (Tenn. Mar. 21, 2011). We have reconsidered our prior opinion in light of *Teddy Ray Mitchell*, and following our review, we affirm the judgment of the trial court, although we reject part of that court's rationale for the revocation.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. JOSEPH M. TIPTON, P.J., filed a separate concurring and dissenting opinion.

John H. Norton, III, Shelbyville, Tennessee, for the appellant, James Edward Farrar, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Chuck Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In *Teddy Ray Mitchell*, the supreme court affirmed Mitchell's jury conviction of disorderly conduct, reversing this court's decision that the evidence was insufficient based upon our determination that the videotape evidence of Mitchell's actions belied the officers' testimony establishing the elements of disorderly conduct. *State v. Teddy Ray Mitchell*, ___ S.W.3d ___, No. E2008-02672-SC-R11-CD, slip op. at 10 (Tenn. Mar. 21, 2011). The supreme court in *Teddy Ray Mitchell* stated that this court "appear[ed] to have reweighed the evidence and concluded that the videotape was necessarily more reliable than the testimony of the witnesses testifying on behalf of the State." *Id.* The supreme court pointed out that some of Mitchell's offensive actions "took place before [he] appeared on either video." *Id.* at ___, slip op. at 11. Applying the usual standard of review of the sufficiency of the evidence in criminal cases, *see, e.g.*, Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 309 (1979); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), the supreme court held that the evidence was legally sufficient to support the conviction of disorderly conduct. *Id*.

*I. The Present Case and Its Legal Antecedents*

In this court's prior opinion in the present case, we reversed the trial court's revocation of the defendant's probation. The trial court based the revocation upon its finding that the defendant, on April 29, 2009, violated his probation by excessively consuming alcohol, which was prohibited by the defendant's rules of probation, *see State v. James Edward Farrar, Jr.*, No. M2009-01285-CCA-R3-CD, slip op. 5 (Tenn. Crim. App., Nashville, Sept. 10, 2010), and by committing the offense of public intoxication, *see* T.C.A. § 40-35-311(a) (declaring a "breach of the laws of this state" is a violation of probation).

This court concluded, however, that the videotapes recorded by the officers' patrol cars contradicted in part their testimony that the defendant, who was standing outside a convenience store, was unsteady on his feet, smelled of alcohol, slurred his speech, and had glassy, bloodshot eyes. Despite the trial court's accrediting the testimony of the two police officers about their perceptions of the defendant, this court followed *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003), in relying upon the videotape evidence to discount part of the officers' testimony. *See id.* We held that the record lacked substantial evidence of public intoxication and that the evidence preponderated against a finding of excessive consumption of alcohol because the videotapes, which between them captured the entirety of the officers' interaction with the defendant, contradicted the officers' testimony and belied the presence of either the elements of the offense of public intoxication or a violation of the probation rule prohibiting excessive consumption of alcohol. *Id.*; *see* T.C.A. § 39-17-310(a) ("A person commits the offense of public intoxication who appears in a public place under the influence

-2-

of a controlled substance or any other intoxicating substance to the degree that: (1) The offender may be endangered; (2) There is endangerment to other persons or property, or (3) The offender unreasonably annoys people in the vicinity.").

In *Garcia*, the supreme court reviewed both the testimony of the officer who arrested Garcia for driving under the influence of an intoxicant (DUI) and a videotape of Garcia's driving as recorded on the police car's video camera. The supreme court determined that the videotape showed no movements of Garcia's vehicle that justified a reasonable suspicion to stop the vehicle. *Garcia*, 123 S.W.3d at 345. The court said, "[I]n accordance with the [*State v.*] *Odom*[, 928 S.W.2d 18, 23 (Tenn. 1996),] standard [of review], we conclude that the trial court's findings of fact at the suppression hearing are not supported by the preponderance of the evidence. Accordingly, we hold that as a matter of law there was no reasonable suspicion to stop Garcia." *Garcia*, 123 S.W.3d at 345.

In utilizing the *Odom* standard for review of the trial court's ruling on a motion to suppress in *Garcia*, the supreme court distinguished it from *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000). In *Binette*, an officer videotaped the movements of Binette's vehicle for several minutes before stopping him and ultimately charging him with DUI, and that videotape was the only evidence presented by the State at the hearing on Binette's motion to suppress. The supreme court applied a de novo standard of review and reversed Binette's conviction, holding that although Binette "did move laterally at times within his lane while operating his vehicle, . . . his movement was not pronounced, and therefore did not give rise to reasonable suspicion" that justified the stop. *Id.* at 220. In *Garcia*, the court stated that the *Binette* court

> applied a de novo standard of review with no presumption of correctness to the trial court's findings of fact because the only evidence presented on behalf of the State at the suppression hearing was a videotape of the defendant's alleged driving errors. Our rationale for so holding was that "when a trial court's findings of fact on a motion to suppress are based *solely* on evidence that does not involve issues of credibility, appellate courts are just as capable to review the evidence and draw their own conclusions."

*Garcia*, 123 S.W.3d at 342 (quoting *Binette*, 33 S.W.3d at 217) (emphasis added in *Garcia*). The *Garcia* court did not apply a de novo standard of review because the videotape was not the only evidence of his driving; the arresting officer also testified. Instead, the court applied the normal standard of review applicable when reviewing a trial court's ruling on a motion to suppress. *Garcia*, 123 S.W.3d at 343.

As was the case in *Garcia*, the present case involves both a review of videotape evidence of the defendant's actions as well as testimony about those actions presented at the revocation hearing. Accordingly, we will review the revocation of the defendant's probation for abuse of the trial court's discretion, the standard of review generally applicable in probation revocation cases.

## II.  Review on Remand

In the wake of *Teddy Ray Mitchell*, this court's reliance upon the April 29, 2009 videotapes to reverse the revocation of the defendant's probation appears to have sparked the supreme court's interest in our reconsideration of the case.

### A. Jury Trial/Bench Trial

The present case calls upon us to essentially review the sufficiency of the evidence supporting a revocation of probation. We notice that in *Teddy Ray Mitchell* the supreme court stressed the role of the jury in determining the credibility of witnesses and resolving issues of fact, but we note that the revocation of probation in the present case was adjudicated by the trial judge following a bench hearing.

The standard of review of fact determinations in civil cases depends upon whether the trier of fact is the trial judge or a jury. *See* Tenn. R. App. P. 13(d). No such distinction is made in determining guilt in criminal cases. Tenn. R. App. P. 13(e). "In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999); *see State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). Accordingly, we see no reason why the nature of the trier of fact is of consequence to the review at hand.

### B.  Standard of Review

We determine that the prior opinion in this case applied the appropriate standard of review. As indicated, like *Garcia* and unlike in *Binette*, the evidence adduced at the revocation hearing included not only the videotapes but also the testimony of the arresting officer and other witnesses. Therefore, we cited *Garcia* and not *Binette*. In our prior opinion, we acknowledged that "[t]he trial court, as the trier of fact in a probation revocation hearing, determines the credibility of witnesses," *id.* (citing *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)), and we expressed the standard of review as one of abuse of discretion, *see James E. Farrar, Jr.*, slip op. at 5.

The accepted appellate standard of review of a probation revocation is abuse

of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Terry Phelps*, ___S.W.3d ___, No. M2008-01096-SC-R11-CD, slip op. at 10 (Tenn., Nashville, Dec. 16, 2010). "In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). In *Harkins*, our supreme court applied the "no substantial evidence" language from *Grear* to review the trial court's revocation of Harkins' community corrections sentence despite the fact that *Grear* did not involve review of the revocation of probation. Instead, at issue in *Grear* was the trial court's denial of probation. *Grear*, 568 S.W.2d at 285 ("The issue presented in this criminal case is whether the Court of Criminal Appeals erred in reversing the action of the trial court in denying the respondent's application for a suspended sentence."). Moreover, the statute governing probation revocation in effect at the time of both *Harkins* and *Grear* contained no specific burden of proof to be met before the trial court could revoke probation. *See* T.C.A. § 40-21-106 (1982). In the absence of a statutorily-specified burden of proof, our courts concluded that "[t]he proof of a violation of the terms of probation need not be beyond a reasonable doubt but is sufficient if it allows the trial court to make a conscientious and intelligent judgment." *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984) (citing *Roberts v. State*, 584 S.W.2d 242, 243 (Tenn. Crim. App. 1979)). The 1989 Sentencing Act, however, added a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-3111(e)(1). Given the inapt citation of *Grear* and the addition of a burden of proof in the 1989 Act, we question whether the "no substantial evidence" language of *Harkins* remains applicable to the determination whether the trial court abused its discretion when revoking probation.

We believe that we applied the correct standard of review – abuse of discretion, not de novo – in the prior opinion. Having done so, we embarked upon an examination of the record to determine whether the evidence presented at the revocation hearing supported the trial court's decision to revoke the defendant's probation.

## C. *Sufficiency of the Evidence Supporting Revocation*

In assessing whether there was no substantial evidence to support the trial

court's determination to revoke the defendant's probation, we first compare the scope of the videotape evidence with that of the videotape evidence at issue in *Garcia* and contrast it with the scope of the videotape evidence in *Teddy Ray Mitchell.* In *Garcia*, as in the present case, the videotape evidence covered from beginning to end the entire activity at issue. In *Teddy Ray Mitchell*, however, the supreme court pointed out that some of Mitchell's offensive activity occurred "before the defendant appeared on either video." We discern that the present case differs from *Teddy Ray Mitchell* in this respect.

On an issue related to the scope of the videotape evidence, we recognize that a problem in this court's treatment in *Teddy Ray Mitchell* was likely the implication that the videotapes suggested the general lack of credibility of the testifying witnesses. We discern a difference between, on the one hand, a videotape's contradicting irrefutably the testimony of a witness as to a point of fact common to both evidence sources and, on the other hand, that videotape's serving to besmirch the witness more generally – even as to points of fact not addressed by the videotape. The scope of relevant testimonial evidence in *Teddy Ray Mitchell* was broader than the facts portrayed by the videotape evidence; yet, the videotape evidence apparently contradicted some facts advanced in the testimony. We comprehend that if we expand the contradiction of specific facts into a general impugning of a witness' credibility, we essentially would be making a credibility determination. We do not believe, however, that we have reviewed the evidence in this manner in the present case.

Officer Tory Moore, the arresting officer in the present case, testified (1) that the defendant "sway[ed] back and forth" and was unsteady on his feet, (2) that his speech was slurred, (3) that he smelled of alcohol, and (4) that the defendant's eyes were glassy and bloodshot. Necessarily, the trial court's determination that the defendant violated his probation was based upon its findings that one or more of these four conditions existed. Officer Jose Garza testified that, although he did not smell alcohol on the defendant's person, he noticed that the defendant had "glassy" eyes and was "unsteady," although the defendant required no assistance to stand.

The videotapes contradicted Officer Moore's testimony that the defendant admitted to drinking "several" beers; the tape revealed that the defendant said he had had two beers. The videotapes also contradicted the claim that the defendant swayed and was unsteady on his feet, and they do not support the claim that his speech was slurred. All of the interaction of Officer Moore with the defendant was recorded on both audio and video tracks. The videotapes show that the defendant stood in place without swaying during interrogation by Officer Moore and during the extended times when the officer walked away from the defendant to talk to other persons. He walked to the patrol car in a normal, steady gait despite being handcuffed behind his back. He conversed with Officer Moore appropriately and with no recorded slurring of his words.

As an aside, we note that, although we did not rely on the physical facts rule, it is analogous in the present situation, and its use in criminal cases in Tennessee, *see State v. Hornsby*, 858 S.W.2d 892, 893 (Tenn. 1993), supports the approach we have taken in reviewing the evidence in the present case. The physical facts rule

> is the accepted proposition that in cases where the testimony of a witness is entirely irreconcilable with the physical evidence, the testimony can be disregarded. That is, where the testimony of a witness "cannot possibly be true, is inherently unbelievable, or is opposed to natural laws," courts can declare the testimony incredible as a matter of law and decline to consider it.

*State v. Allen*, 259 S.W.3d 671, 679 (Tenn. 2008) (quoting *Hornsby*, 858 S.W.2d at 894). In *Hornsby*, our supreme court acknowledged that when "'undisputed physical facts are entirely inconsistent with and opposed to testimony . . . the physical facts must control.'" *Id.* (quoting *Wood v. United States*, 342 F.2d 708, 713 (8th Cir. 1965)). The physical facts rule is available *to an appellate court* in reviewing the sufficiency of the evidence. *Id.* ("When determining the sufficiency of the evidence, then, an appellate court is not bound to consider a witness' testimony if it is impossible to reconcile with physical evidence."). The rule embraces the utility of an appellate court's reacting critically to evidence that simply cannot be true.

In our prior opinion, we considered that the trial court accredited the police officers' testimony and discredited the testimony of corrections officers who saw the defendant at the jail after he was arrested on April 29, 2009, and who opined that he was not intoxicated. When we eliminate from consideration the testimony of these latter two officers, however, we are still confronted with the videotapes which do not depict the defendant as unsteady on his feet or speaking in a slurred manner.

Accordingly, we turn to the other testimony-based conditions of intoxication – odor of alcohol and glassy or bloodshot eyes, respectively. As we pointed out in our prior opinion, the videotapes obviously cannot speak to the presence or absence of the odor of alcohol about the defendant's person, and they did not enlighten us as to the condition of the defendant's eyes. We note that, even by Officer Moore's own testimony, manifestations of the defendant's intoxication were "borderline" and not egregious.

Based upon these analyses, we opined that the record evinced "no substantial evidence from which the trial court could have concluded that the defendant committed the offense of public intoxication." *James E. Farrar, Jr.*, slip op. at 6. We also opined that the State did not carry its burden of proving by a preponderance of the evidence in this

revocation proceeding that the defendant had consumed alcohol to excess. *Id.* These are the quests into the evidence that *Garcia* invited us to make, *see Garcia*, 123 S.W.3d at 345 (applying the *Odom* standard for the review of suppression determinations and concluding "that the trial court's findings of fact at the suppression hearing are not supported by the preponderance of the evidence"), and based upon our conclusions, we held that the trial court abused its discretion in revoking the defendant's probation.

From this point in our analysis, we address separately the two bases for revoking the defendant's probation – (1) his guilt of public intoxication and (2) his excessive consumption of alcohol.

*(1) Public Intoxication as Basis of Revocation*

Even if the defendant smelled of alcohol and had bloodshot eyes, we fail to see how these factors in and of themselves equate to intoxication, and as we said, the videotape evidence does not show that the defendant slurred his words or was unsteady on his feet. That being said, however, we need not conclude, for purposes of our analysis of a probation violation based upon the defendant's committing public intoxication, whether the State established that the defendant was actually under the influence of an intoxicant. As mentioned above, the proscriptive statute requires that the offender be under the influence "to the degree" that either the offender, other persons, or property is endangered or that the "offender reasonably annoys people in the vicinity." *See* T.C.A. § 39-17-310(a). The record evinces no basis for concluding that such endangerment or annoyance occurred. Accordingly, the trial court abused its discretion to the extent that it used the commission of a violation of Code section 39-17-310 as a basis for revoking probation.

*(2) Excessive Consumption of Alcohol as Basis for Revocation*

The defendant's probation rules forbade the consumption of alcohol "to excess." Obviously, the rules did not forbid the defendant from drinking alcohol, but we believe that the phrase "to excess" may refer to a condition less extreme than outright intoxication. We conclude that, to be manageable and enforceable, the probation rule prohibiting the consumption of alcohol "to excess" refers to a physical, verbal, or behavioral, or otherwise discernible, manifestation of the influence of alcohol on the probationer.

That said, based upon our review pursuant to *Garcia*, the videotape evidence in this case does not show that the defendant drank alcohol to excess. It shows, via his recorded admission, that he drank two beers, but it does not show any of the testimony-based conditions of excessive drinking. If a videotape were capable of showing *definitively* that a person drank alcohol to excess, and if the videotapes in question made such a *definitive*

showing, we would have no hesitation about again reversing the probation revocation. As we said, we believe *Garcia* invites and authorizes us to pay heed when testimonial evidence simply cannot be true.

Upon reviewing *Teddy Ray Mitchell* and the supreme court's scrutiny of the videotape evidence at issue in that case, we determine that the question of excessive drinking might entail discernible nuances or subtleties of behavior that, nevertheless, may be incapable of demonstration through the videotapes admitted in the present case. The question is not as stark as, for instance, whether a traffic light is green or red at a given moment. In other words, the videotape evidence at issue does not definitively rule out the possibility that the defendant, although not guilty of public intoxication, drank alcohol to excess.

That said, we must determine then whether *any* evidence did establish excessive drinking. A fair understanding of Officer Moore's comment during his interaction with the defendant on April 29, 2009, is that he opined that the defendant was "borderline" intoxicated. He also stated that the defendant smelled of alcohol and had bloodshot eyes. Although the videotapes do not indicate that the defendant slurred his speech, we cannot say that the officer's close-up, face-to-face encounter with the defendant did not yield perceptions that he struggled with his speech. Given that the burden of proof was preponderance of the evidence and that the trial court accredited the officers' testimony, we cannot say that no substantial evidence of excessive drinking existed.

### III. Conclusion

Although the evidence in this case does not establish that the defendant violated his probation by committing the offense of public intoxication, the trial court did not abuse its discretion by determining the defendant violated his probation by consuming alcohol to excess. On that basis, the revocation of probation is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE