# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON

Assigned on Briefs December 4, 2012

## STATE OF TENNESSEE v. WILLIE HOWARD MULL

### Direct Appeal from the Circuit Court for Madison County
### No. 08-537    Donald H. Allen, Judge

---

### No. W2012-00164-CCA-R3-CD  -  Filed December 11, 2012

---

The Defendant, Willie Howard Mull, pled guilty to aggravated assault, felony reckless endangerment, and unlawfully carrying a weapon.  The trial court sentenced him to an effective sentence of four years, to be served on probation.  A warrant was issued alleging the Defendant had violated his probation.  After a hearing, the trial court revoked the Defendant's probation and ordered him to serve his sentence in confinement.  On appeal, the Defendant contends the trial court abused its discretion when it revoked his probation.  After a thorough review of the record and applicable law, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Paul Edward Meyers (at hearing) and George Morton Googe (on appeal), Jackson, Tennessee, for the appellant, Willie Howard Mull.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Ben Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Procedural Background and Facts

In October 2008, the Defendant pled guilty to aggravated assault, felony reckless endangerment, and unlawfully carrying a weapon. Transcripts of the guilty plea hearing and sentencing hearing are not included in the record. The judgments reflect that the Defendant was sentenced as a Range I offender to four years for the aggravated assault conviction, two years for the felony reckless endangerment conviction, and thirty days for the conviction of unlawfully carrying a weapon. The trial court ordered that the Defendant's sentences run concurrently and be served on probation. The trial court also ordered the Defendant to perform 100 hours of community service.

On October 17, 2011, the Defendant's probation officer, Annette Hardaway, filed a probation violation report. In the report, she alleged that the Defendant had violated his probation by not obeying the laws of the State of Tennessee; by engaging in assaultive, abusive, threatening, or intimidating behavior; by not paying the required fees and fines; and by not completing the 100 hours of community service. On October 19, 2011, the trial court issued a warrant for the Defendant's arrest.

At the hearing to determine whether the Defendant violated his probation, the parties presented the following evidence: The parties agreed that the Defendant had recently been indicted for aggravated domestic assault. Kiana McDougal then testified that the Defendant was the father of her child. She said that, on October 13, 2011, the two lived in an apartment together. At 8:00 a.m., she called the police to come to her home because the Defendant had "strangled" her.

McDougal explained that, at around midnight the night before the incident, the Defendant came inside after having been outside for a couple of hours. McDougal said that when he came in he was not "acting himself and his behavior was different." The Defendant accused McDougal of "cheating" on him. He became angry with her and threw her down on the bed, telling her that she was going to die. The Defendant then placed his hands around her neck and strangled her. McDougal said she went to the hospital as a result of the attack, she had swelling to her face, and her eyes had "[h]emorrhaged."

During cross-examination, McDougal described the events leading up to the incident, saying that she was sleeping when the Defendant returned to the house. The Defendant woke her up, the two had a conversation, and she fell back asleep. The Defendant then woke her up again, to "perform sexual acts." After she did so, she tried to leave and "wash up," and the Defendant would not let her. He wanted her to "hold him." McDougal said this behavior was not normal for the Defendant.

McDougal said she fell back asleep while holding the Defendant. She woke up,

and the Defendant was on top of her. McDougal said the Defendant did not look like himself, he was sweating "real bad," and he could not get an erection. McDougal testified that the Defendant had never before abused her. McDougal said that, after the Defendant attacked her, she called her mother because she "wanted the comfort of [her] mom." McDougal's stepfather called the police.

McDougal said she believed that the Defendant had been using some kind of drug that evening, and she asked the trial court to order some type of rehabilitation as part of the Defendant's sentence.

On redirect examination, McDougal testified that the Defendant also had a child with another woman, Aris Stewart. She said, at the time of this incident, the Defendant was on probation for the aggravated assault of Stewart.

Annette Hardaway, the Defendant's probation officer, testified that the Defendant was on probation for the aggravated assault of Stewart. Hardaway testified that the Defendant violated his probation by being arrested and charged with the aggravated assault of McDougal. Hardaway said the Defendant had also violated his probation by not paying either the supervision fee arrearage of $540.00 or the court costs and fines of $1,200. Hardaway testified that the Defendant had also completed only fourteen of the one hundred hours of community service the trial court had ordered.

During cross-examination, Hardaway testified that this was the first probation violation report that she had filed against the Defendant since she began supervising him on October 23, 2008. She said that the Defendant always reported to her, verified his employment, and paid some supervision fees. He, however, never paid any of his court costs and fines, and in three years he had only completed fourteen of the 100 hours of his court-ordered community service.

The trial court noted that the probation agreement ordered the Defendant to pay $75 per month on his fines, court costs, and restitution beginning in December 2008. Hardaway said the Defendant had not made any of these payments. Upon further questioning from the trial court, Hardaway testified that the Defendant did not report his arrest to her, but she found out from other sources. She said that she learned of this incident soon after it happened, and she visited McDougal in the hospital, where she saw her injuries, including her hemorrhaged eyes.

Based upon this evidence, the trial court revoked the Defendant's probation sentence and ordered him to serve the balance of his sentence in prison. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it revoked his probation sentence. He notes that the victim said he was not "acting like himself" at the time of this incident. The State first claims that the Defendant waived this issue by not providing adequate argument. The State also asserts that, even if not waived, the Defendant's argument is without merit.

In Tennessee, the procedure for a revocation of a probation sentence is covered in Tennessee Code Annotated section 40-35-311. The statute provides, in part, as follows:

> Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case.

T.C.A. § 40-35-311(a) (2010).

The essential question facing the trial court in a probation revocation proceeding is whether the trial court's determination will subserve the ends of justice and the best interest of both the public and the probationer. *See Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956). When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. T.C.A. § 40-35-311(e) (2010). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. §§ 40-35-308, -310, -311 (2010). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e)(2) (2010). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." T.C.A. § 40-35-311(e)(1) (2010); *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement). Furthermore, when probation is revoked, the trial court may order "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension . . . ." T.C.A. § 40-

35-310(a) (2010).

Because Tennessee law permits the trial court to revoke probation only upon finding, by a preponderance of the evidence, that the defendant has violated the terms of his or her probation, this Court will not disturb the trial court's determination absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011), *perm. app. denied* (Tenn. Oct. 18, 2011); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). A finding of abuse of discretion "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the case presently before us, the record supports that the Defendant violated his probation. He was arrested and charged with aggravated assault. The victim of the assault testified at the trial about the assault. The Defendant's probation officer also testified about seeing the victim in the hospital and about seeing the victim's injuries. The Defendant's probation officer also testified that the Defendant had violated his probation by not paying his court costs, fees, and fines and by not completing his community service. This evidence is sufficient to support the trial court's finding that the Defendant violated his probation. Once the trial court has found that a defendant has violated the terms of his or her probation, it is vested with the statutory authority to revoke the probation and order him to serve some or all of his original sentence in confinement followed by probation. *Hunter*, 1 S.W.3d at 644. Under these circumstances, we find no abuse of discretion in the trial court's revocation of the Defendant's probation and its ordering the Defendant to serve the balance of his sentence in confinement. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE