IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs June 26, 2013

**STATE OF TENNESSEE v. RICHIE P. HAWKINS**

**Direct Appeal from the Circuit Court for Blount County**
**No. C18756     David R. Duggan, Judge**

**No. E2012-02093-CCA-R3-CD - Filed July 11, 2013**

In May 2010, the Defendant, Richie P. Hawkins, pled guilty to promotion of the manufacture of methamphetamine, and the trial court sentenced him, as a Range III offender, to serve twelve years on community corrections. The Defendant's community corrections officer filed an affidavit, alleging that he had violated his community corrections sentence by being convicted of burglarizing an automobile and domestic assault. After a hearing, the trial court revoked the Defendant's community corrections sentence and ordered the Defendant to serve the balance of his sentence in confinement. On appeal, the Defendant contends the trial court erred when it ordered him to serve his sentence in confinement rather than reinstating his community corrections sentence. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Mack Garner (at hearing), Maryville, Tennessee, and J. Liddell Kirk (on appeal), Knoxville, Tennessee, for the Appellant, Richie P. Hawkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Mike Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's conviction for promotion of methamphetamine manufacture on May 20, 2010, a conviction for which he received a twelve-year community

corrections sentence. On May 11, 2011, the Defendant's community corrections officer filed an affidavit swearing that the Defendant had violated his community corrections sentence by failing to appear in court and by failing to check in with the officer. The trial court issued a warrant, and, on August 5, 2011, the parties agreed to dismiss the warrant.

On May 29, 2012, the Defendant's community corrections officer filed a second warrant, alleging that the Defendant had violated the community corrections requirements by failing to notify the officer of new charges against him and by being convicted of: auto burglary in Campbell County on March 26, 2012, and domestic assault in Anderson County on January 25, 2012. The affidavit alleged that the Defendant had also not made scheduled payments on his court obligations or supervision fees. The trial court issued a warrant and held a hearing on the warrant.

At the hearing, the parties presented the following evidence: the State first offered certified copies of the two convictions it alleged the Defendant received while serving his community corrections sentence. The first conviction was for auto burglary in Campbell County and the second conviction was for domestic assault in Anderson County. Officer Cathy Vitek, the Defendant's community corrections supervisor, testified that the Defendant was transferred to her supervision in January 2011. Officer Vitek testified that, when she conducted a "jail search," she discovered the charges from Campbell and Anderson Counties. Officer Vitek stated that the Defendant had already been convicted of these offenses by the time she discovered the charges.

Officer Vitek testified that the Defendant had told her that he was having problems with his ex-girlfriend, who was the mother of his children. He told her that the couple were "not getting along," but he never mentioned the domestic assault charge. The officer said that she could not continue to supervise the Defendant due to his failure to report and make court payments. She further indicated that the Defendant "did not cooperate very well." Officer Vitek said the Defendant had also failed to take the required alcohol and drug assessment.

During cross-examination, the officer testified that the Defendant never failed a drug test while under supervision, but, on one occasion, he did not get tested because he had told her that he would not pass the test. Officer Vitek said that, because the Defendant had not had an assessment done, she could not say whether he had a problem with drugs while he was under her supervision.

The Defendant testified that he was thirty-three years old at the time of the hearing, had received his GED, and was the father of two children, ages six and two years old. His two children had different mothers, and both children resided with their respective mothers. The Defendant said he was an "addict" and had been introduced to methamphetamine. He

was originally arrested for purchasing Sudafed pills, which resulted in his conviction for promotion to manufacture methamphetamine.

The Defendant said that while under Officer Vitek's supervision he attempted to report as directed. He said that there were two times that he did not report due to work obligations. He said that he called Vitek the following day to explain why he had been unable to report. The Defendant said he was terminated from his employment because of his criminal history. His supervisor, who thought he was a good employee, found him another position as a paver. He stayed with this subsequent company until his arrest for another promotion of manufacturing methamphetamine charge, which was later dismissed. Officer Vitek had filed a violation warrant based on this charge, but she withdrew it when the charge was dismissed.

The Defendant conceded that he was using methamphetamine while on community corrections. He said he "had a problem" and was "a drug addict." He said he needed drug treatment for his methamphetamine addiction. The Defendant said that he would have failed any drug test given him while he was on probation because he was using methamphetamine.

The Defendant explained the circumstances of his Campbell County conviction, saying that both he and his brother were using methamphetamine. The Defendant said he was in a motel room with his ex-girlfriend when his brother called him from a separate motel and asked him to take him breakfast. The Defendant agreed and took his brother to a Waffle House. The two then got "high," and the Defendant took his brother back to his motel. While out taking his brother to breakfast, some items were stolen from the top of a vehicle, including a luggage bag. The Defendant said that, after dropping his brother off, he went back to his motel, and police arrived. The police informed him that "somebody" had accused the Defendant, the Defendant's ex-girlfriend, and the Defendant's brother of stealing "something" off the top of a vehicle. The Defendant said he pled guilty to this offense because his ex-girlfriend and brother were both involved, so he took the charge. Neither of them, however, were charged or convicted of the offense. The Defendant then said that he "partook in the crime." After pleading guilty, he received a two-year sentence, to be served on probation.

The Defendant said that, at the time he pled guilty in Campbell County, he knew he was still serving a community corrections sentence. He did not inform his community corrections officer of these charges, in part, because he was involved in a custody dispute with DCS, who had taken custody of his son away from the Defendant and the Defendant's wife after the Defendant received the promotion of methamphetamine charge that was ultimately dismissed. He said he knew that the Campbell County conviction would hurt his position with DCS.

-3-

The Defendant discussed the Anderson County conviction, saying that it involved his ex-girlfriend, who was the mother of his daughter and also a drug addict. This was the same woman involved in the Campbell County offense. He said that she was addicted to pills and, as a result, was very moody. He knew that she would, at some point, cause him problems.

The Defendant said that, despite all the negative repercussions, he had been unable to break his methamphetamine addiction. He said that, because of his addiction, he had been unable to ask for help, which he thought that he desperately needed. The Defendant said that he received a probation sentence for his Anderson County sentence and that he had violated his probation by failing a drug test, testing positive for methamphetamine and marijuana.

The Defendant testified that he had been working with a drug treatment program in jail as a charter member. He completed that program, and then had the director of the program conduct an assessment on him to see if he was ready for drug treatment. The Defendant identified copies of the classes that he had successfully completed while incarcerated.

The Defendant admitted that he had violated the terms of his community corrections sentence. He asked the trial court to order that he serve some time in confinement, followed by placement into the drug court.

The Defendant's wife, Tracy Hawkins, testified that she and the Defendant had been married for ten years but were separated. She legally adopted the Defendant's son, but their son had been taken from them because of their methamphetamine problem. Hawkins said she had since received custody of their son from DCS, and she had successfully retained custody for almost a year. The Defendant was allowed supervised visitation, and the juvenile court ordered him to undergo drug rehabilitation before the Defendant would be permitted unsupervised visitation with his son.

Hawkins testified that the Defendant had a drug problem for which he asked her to help him seek treatment. The Defendant had applied to several rehabilitation programs, but he had never received any drug treatment. Hawkins said that she and the Defendant maintained a close relationship because of their son, who adored his father. She said that the Defendant's desire to be free of his drug addiction was new, and this was the first time he had asked for help or treatment.

Based upon this evidence, the trial court found:

[T]he Court finds that [the Defendant] has engaged in a material violation of his Community Corrections sentence based upon these two new convictions, one in Campbell County for auto burglary, one in Anderson County for

-4-

domestic assault. Also for failure to make payments on his court costs and supervision fees. This is, of course, yet another sad, tragic case where once again we see where drugs have destroyed lives. Terrible. And there are times and places when we try to pursue drug treatment under the theory that – depending upon whether it's a violent crime or a non-violent crime, and various and sundry other circumstances and whether or not someone meets the eligibility requirements to participate in that drug program. I don't know whether he would meet the requirements to be admitted into the Drug Court Program in Davidson county or not.

I . . . don't know the full extent of his criminal history. Once again, this was a plea agreement that was announced on May 14, 2010. I don't know what the underlying criminal history therefore is because the court simply accepted the plea agreement. But I do note that it was accepted as a range-three offender, which means he's got a substantial previous history even as of May 14, 2010, let alone these new charges that have been picked up since then.

Again, this is a Community Corrections sentence, where it's already been determined that but for the presence of the Community Corrections Program it would have been appropriate for this Defendant to have been incarcerated. Another sad situation.

The Court's decision is that your Community Corrections sentence will be revoked and you'll be ordered to serve the balance of your sentence.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that, given his sincere inclination to seek help for his drug addiction, it was an abuse of the trial court's discretion to order him to serve the balance of his sentence in confinement. The State counters that the proof supports the trial court's decision.

A trial court may revoke a defendant's community corrections sentence based on the defendant's non-compliance with the conditions of the community-based program. T.C.A. § 40-36-106(e)(3)-(4) (2010). The trial court must hold a probation revocation proceeding, during which "the trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." T.C.A. § 40-35-311(d) (2010); *see State v. Hill*, 987 S.W.2d 867, 870-71 (Tenn. Crim. App. 1998) (If the defendant already began serving his sentence, the trial judge could only revoke a

community corrections sentence with a proper revocation hearing and proper notice.).
During the proceeding, the trial court must find proof of a community corrections violation
by a preponderance of the evidence, and either:

> (A) Cause the defendant to commence the execution of the judgment as
> originally entered, or otherwise, in accordance with § 40-35-310; or

> (B) Resentence the defendant for the remainder of the unexpired term to any
> community-based alternative to incarceration authorized by chapter 36 of this
> title; provided, that the violation of probation and suspension is a technical one
> and does not involve the commission of a new offense.

T.C.A. § 40-35-311(e). Because Tennessee law permits the trial court to revoke probation
only upon finding, by a preponderance of the evidence, that the defendant has violated the
terms of his or her probation, this Court will not disturb the trial court's determination absent
an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Farrar*,
355 S.W.3d 582, 586 (Tenn. Crim. App. 2011); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn.
Crim. App. 2007); *see also State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)
(adopting the probations violation standard for a community corrections program violation
due to the sentences' similar nature). A finding of abuse of discretion "'reflects that the trial
court's logic and reasoning was improper when viewed in light of the factual circumstances
and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555
(quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). We note that " '[o]nly one basis
for revocation is necessary,'" and a defendant's admission to a violation of the conditions of
release to the community corrections program is sufficient evidence for such a revocation.
*State v. Joe Allen Brown*, No. W2007-00693-CCA-R3-CD, 2007 WL 4462990, at *4 (Tenn.
Crim. App., at Jackson, Dec. 20, 2007), *no Tenn. R. App. P. 11 application filed* (quoting
*State v. Alonzo Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn.
Crim. App., at Knoxville, Oct. 5, 2001), *no Tenn. R. App. P. 11 application filed* ); *see also*
*State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (holding that a defendant's
concession of an act constituting violation of probation constitutes substantial evidence of
violation, and the trial court's revocation based thereon is not abuse of discretion).

If the trial court revokes the defendant's community corrections sentence, then, as
mentioned above, it may "[c]ause the defendant to commence the execution of the judgment
as originally entered." T.C.A. § 40-35-311(e)(A).

In the case under submission, the record supports the trial court's finding that the
Defendant violated the terms of his community corrections sentence. The State offered two
certified copies of convictions that the Defendant had received while serving his community
corrections sentence. The Defendant also admitted these convictions, as well as other

behavior, including drug use, that constitute a violation of his sentence. Accordingly, the evidence supports the trial court's finding that the Defendant could not comply with the terms and conditions of his release. As such, we conclude that the trial court's revocation of the Defendant's community corrections sentence was not an abuse of discretion. We further conclude that, upon this finding, the trial court was within its discretion when it ordered the Defendant to serve the balance of his original sentence in confinement. The Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly found that the Defendant had violated his community corrections sentence and properly ordered that the Defendant serve the balance of his sentence in confinement.

_____
ROBERT W. WEDEMEYER, JUDGE