FILED

06/05/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2025

## STATE OF TENNESSEE v. MICHAEL JOE CUNNINGHAM

**Appeal from the Circuit Court for Franklin County
Nos. 2020-CR-94, 2020-CR-20   Bradley Sherman, Judge**

———————————————————————

### No. M2024-01124-CCA-R3-CD

———————————————————————

Defendant, Michael Joe Cunningham, pled guilty in two separate cases to one count of making a false report and one count possession of twenty-six grams or more of methamphetamine. He received an effective fourteen-year community corrections sentence that was later transferred to probation. Following a hearing on a warrant for violation of his probation based on Defendant's arrest for new offenses, the trial court revoked Defendant's probation and ordered him to serve his original sentence incarcerated. Defendant appeals, arguing that the trial court abused its discretion by fully revoking his probation rather than ordering treatment for his drug addiction. Upon review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and KYLE A. HIXSON, JJ., joined.

Joseph E. Ford, Winchester, Tennessee (on appeal), and Quinn Rodriguez, Murfreesboro, Tennessee (at revocation hearing) for the appellant, Michael Joe Cunningham.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Courtney Lynch, District Attorney General; and Casey Little, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On July 30, 2020, Defendant pled guilty to false reporting in case 2020-CR-20 and possession of methamphetamine in case 2020-CR-94. Defendant was sentenced to consecutive sentences of four years in case 2020-CR-20 and ten years in case 2020-CR-

94, to be served on community corrections, both consecutive to two unrelated cases. Defendant was subsequently transferred from community corrections to probation. On November 22, 2023, a probation violation warrant was issued based on Defendant's arrest for possession of methamphetamine and driving on a revoked license.

At the 2024 probation violation hearing, Tabitha Jefferson with the Tennessee State Department of Correction, Probation and Parole testified that she was Defendant's probation officer and she recounted Defendant's supervision history. In 2022, Defendant's community corrections sentences were transferred to probation. Defendant reported to probation for intake on November 30, 2022, and tested positive for methamphetamine and amphetamine. On December 12, 2022, Defendant again tested positive for methamphetamine and amphetamine. Based on the two positive drug tests, Ms. Jefferson filed a probation violation report on December 16, 2022. Ms. Jefferson testified that on February 8, 2023, Defendant pled guilty to possession of a Schedule II drug, violation of the sex offender registry, and evading arrest in Coffee County.[1]

In July 2023, Defendant appeared in Franklin County Circuit Court for a probation violation hearing. Ms. Jefferson recalled that Defendant was "[r]evoked for 11 [months] 29 [days] and furloughed to treatment." Defendant originally reported to "Freedom Recovery," and he later transferred to "Threshold Recovery." Ms. Jefferson stated that Defendant was actively in recovery from August 10, 2023, until November 14, 2023, combining his time at both facilities.

On November 22, 2023, Ms. Jefferson filed the instant probation violation warrant due to Defendant's November 15 arrest for possession of methamphetamine and driving on a revoked license. Ms. Jefferson testified that Defendant violated rule one, that he would abide by federal, state, and local laws; rule eight, that he would not use or possess illegal drugs; and rule ten, that Defendant would observe special conditions imposed by the court, specifically, that Defendant "was ordered to complete Threshold Ministries Recovery Program and Aftercare. He [was] to remain in the program until [March 8, 2024], [but] left Threshold Ministries for court on Tuesday [November 14, 2023] and never returned."

On cross-examination, Ms. Jefferson stated that she began supervising Defendant in July 2023, and she agreed that Defendant had been in custody the majority of the time she supervised him. She further agreed that Defendant was compliant with his reporting requirement until December 2022, and his lack of reporting since that time was due to his

---

[1] The parties and the trial court make reference to two separate probation violations resulting in revocation and reinstatement regarding the failed November and December 2022 drug tests and the February 2023 Coffee County charges. However, the record does not contain the probation violation warrants or orders.

- 2 -

being in custody or in treatment. She clarified that Defendant's lack of reporting was not a ground for the instant probation violation.

On December 20, 2022, Defendant completed a risk and needs assessment via phone. Defendant was assessed as a "high risk offender" with high needs in "residential, alcohol and drug use, and family," and moderate needs in "education, attitudes, and behaviors." Ms. Jefferson agreed that Defendant had the "highest likelihood" of "being a lawful resident of the community" if he set goals to maintain a stable residence, obtain alcohol and drug rehabilitation, and have a support system.

Regarding the instant probation violation, Ms. Jefferson stated that on November 14, 2023, Defendant "left Threshold Ministries for court and then never returned." She agreed that she did not talk with the officer who arrested Defendant, and that the probation violation was based solely on the police report. Ms. Jefferson did not have any knowledge regarding the pending charges. She stated that Defendant violated rule ten because he "was court ordered to attend six months of treatment[,] and he only completed [ninety-four] days." Ms. Jefferson identified a furlough order[2] indicating that Defendant had been "accepted into Freedom Recovery, and that he would stay there" until March 8, 2024.

Defendant testified that he had been incarcerated since November 15, 2023. At the time he was arrested, Defendant was employed by Gribbins Insulation and Scaffolding; he believed that employment would continue if he was reinstated to probation. Defendant agreed this was not his first probation violation; he had served eleven months and twenty-nine days for that violation. For his second violation, Defendant agreed to serve eleven months and twenty-nine days with six months "suspended" to attend a rehabilitation program. Regarding the positive drug test in December 2022, Defendant asserted that he "was tested within six or seven days back to back. That's not enough time to get this stuff out of your system." He denied using drugs between the two drug tests. He further asserted that he reported to another probation officer via a zoom call at "the end of December[,]" and that he tried to report to Ms. Jefferson via a zoom call, but she did not answer the call.

Defendant testified that he had returned to Threshold Recovery after attending court on November 14, 2023, but he was "a little past curfew." The next day, Defendant was driving to pick up his wife to attend an alcoholics anonymous and narcotics anonymous meeting when the officer pulled him over for driving on a revoked license. Upon request, Defendant granted consent for the officer to search his vehicle because he had "nothing to hide." The officer found "a vial . . . on the floor by the passenger seat, between the seat and the door." Defendant stated that he had been granted a restricted license approximately two months prior that allowed him to drive to work and to meetings for his drug treatment.

---

[2] The furlough order was not admitted into evidence and is not in the record.

He claimed, "I told the officer that I had a restricted license[,] and I showed him the paper from the court, and he said, he don't care and threw it back in the car." Defendant noted that the substance found in the vial had not been tested or weighed.

On cross-examination, Defendant identified a message he sent from the kiosk in jail. After Defendant hesitated to read the message, the court read the message into the record:

> Okay, this way I can send more. Well, I was out on a furlough to Threshold Recovery, out in Murfreesboro. Been out since July 27th doing good out there working for Gribbins Insulation making real good money. Then I got pulled over in Tull-on-ur-homie. And got arrested for simple possession of meth that wasn't mine 'cause mine out the W.

Defendant confirmed that "W" meant "window."

After hearing the parties' arguments, the trial court noted that it was not "entirely resting [its] decision" on the collateral matters in Coffee County related to Defendant's arrest. It recounted Defendant's history of supervision in both cases, noting that this was Defendant's third probation violation. The trial court found that "at a bare-minimum" probable cause had been found in the Coffee County case, and thus, Defendant "violated the laws and in turn violated [r]ule [one] of his probation by virtue of receiving these new charges[.]" It further found that Defendant violated rule eight "based upon the kind of charges he incurred and based upon his jail communication and his responses to some of the questions here today." Regarding rule ten, the court noted that it was "clear that [Defendant] did not satisfy the terms and conditions of that furlough order by completing six months." The trial court found by a preponderance of the evidence that Defendant violated his probation.

Regarding the consequence of the violation, the trial court took judicial notice of its own files and found that Defendant had a lengthy criminal history, specifically noting that Defendant was "actively being prosecuted at this very moment in a neighboring county[.]" *See* T.C.A. § 40-35-102(3)(B). It further found that it had previously encouraged Defendant's rehabilitation through the use of alternative sentencing. *See id.* § 40-35-102(3)(D). It found that Defendant had two previous probation violations and revocations in this case. The trial court stated that it did not take probation violations "lightly" and its belief that it was "an axiomatic truth that the best indicator of future behavior is past behavior."

The trial court found that Defendant had a lengthy criminal history that made confinement necessary to protect society. *See id.* § 40-35-103(1)(A). It further found that confinement was necessary to avoid depreciating the seriousness of the offense and that

- 4 -

measures less restrictive than confinement have been recently and unsuccessfully applied. *See id.* § 40-35-103(1)(B), (1)(C). Finally, the trial court noted that Defendant's potential or lack of potential for rehabilitation should be considered in determining the appropriate consequence for a probation violation and stated that Defendant was requesting "another bite at the apple here and be put back on probation after being sentenced essentially to mandatory treatment for his substance abuse issues."

The trial court revoked Defendant's probation in full and ordered his original sentence into execution with credit for the time Defendant successfully spent on community corrections. The trial court entered written revocation orders the same day. On May 20, 2024, Defendant filed a "Motion to Reduce Sentence" pursuant to Tennessee Rule of Criminal Procedure 35, which the trial court denied without a hearing on June 4, 2024. Defendant filed an untimely notice of appeal on July 26, 2024, and this court waived the timely filing requirement. Defendant's appeal is now before this court.

## Analysis

Defendant argues that the trial court erred by fully revoking his probation and ordering him to serve his original sentence. The State asserts that the trial court properly exercised its discretion. We agree with the State.

We review the trial court's decision to revoke probation for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Discretion is abused in a probation revocation case only if the record "contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011) (quoting *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)); *see State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Because the trial court placed sufficient findings on the record to support its decision regarding the violation and consequence determination, we review its decision for an abuse of discretion.

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. As explained by the Tennessee Supreme Court "[t]he first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Dagnan*, 641 S.W.3d at 757. A trial judge may revoke a defendant's probation upon a finding by the preponderance of the evidence that a defendant has violated the conditions of his or her probation. *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also Harkins*, 811 S.W.2d at 82.

As to the first *Dagnan* prong, Defendant does not challenge the trial court's finding that he violated probation by acquiring new criminal charges, possessing illegal drugs, and violating the special condition that he attend rehabilitation for six months. Thus, we move directly to the second *Dagnan* prong to determine whether the trial court made sufficient findings to support its decision to order Defendant to serve the balance of his sentence in confinement. After deciding to revoke a defendant's probation, a trial court may:

> (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for [the] remainder of the unexpired term to a sentence of probation. *See* T.C.A. §§ 40-35-308(c)(1), (2); -310; - 311(e)(1), (2) (2021).

*State v. Williams*, 673 S.W.3d 255, 259 (Tenn. Crim. App. 2023) (citation omitted).

This court has previously stated that "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023). Relevant factors for a trial court to consider include "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. Additionally, "[a]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jones*, No. E2023-00155-CCA-R3-CD, 2023 WL 6389810, at *3 (Tenn. Crim. App. Sept. 29, 2023) (citation omitted), *no perm. app. filed*; *see* T.C.A. § 40-35-311(e)(2).

Defendant asserts that the trial court "punished [Defendant] for having the disease of addiction/substance abuse disorder." He argues that the trial court abused its discretion by ordering incarceration "without allowing him an opportunity to commit himself to long-term rehabilitation" because he had "suffered from substance abuse disorder apparently his whole adult life [but] was only allowed the opportunity to go to rehabilitation for a period of ninety-four (94) days."

The trial court revoked Defendant's probation after considering Defendant's criminal history, including his history of supervision in this case. Contrary to Defendant's assertion, the record shows that the trial court provided Defendant the opportunity to attend long-term rehabilitation after Defendant's second probation revocation. The trial court was not required to order Defendant to attend "mandatory treatment for his substance abuse issues" a second time. *See Jones*, 2023 WL 6389810, at *3. The trial court noted that

Defendant was seeking "another bite at the apple" and implicitly found that Defendant's potential for rehabilitation was low after its previous efforts to address Defendant's substance abuse were unsuccessful. *See State v. Dagnan*, No. M2020-00152-CCA-R3-CD, 2021 WL 289010, at *2-3 (Tenn. Crim. App. Jan. 28, 2021) (affirming full revocation of the defendant's probation after the defendant had been furloughed to a drug treatment program, but the defendant absconded and acquired new charges), *aff'd*, 641 S.W.3d 751 (Tenn. 2022); *State v. Smith*, No. E2013-01796-CCA-R3-CD, 2014 WL 1369901, at *2 (Tenn. Crim. App. Apr. 7, 2014) (affirming full revocation of the defendant's probation after the defendant "had been given an opportunity to report back to his probation officer and attend drug treatment, but he failed to comply with either condition").

The trial court did not abuse its discretion in ordering Defendant to serve his original sentence in confinement after finding he violated the terms of probation. Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

s/ *Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE