IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2013

STATE OF TENNESSEE v. CHARLES KING MORRIS
a/k/a CARL ADAM JACKSON

Appeal from the Criminal Court for Hamilton County
No. 282591    Rebecca J. Stern, Judge

No. E2013-00230-CCA-R3-CD - Filed August 12, 2013

Charles King Morris ("the Defendant") pleaded guilty to one count of theft over $1000 and, pursuant to his plea, was sentenced as a Range I, standard offender to a three-year sentence suspended to supervised probation. After the Defendant was arrested again for theft of property, his probation officer filed a probation violation report. The trial court subsequently held an evidentiary hearing, revoked the Defendant's probation, and ordered the Defendant to serve the remainder of his original sentence in confinement. The Defendant appeals the trial court's ruling. After a thorough review of the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment
of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Ardena J. Garth, District Public Defender; Blake Murchison and Richard K. Mabee, Assistant Public Defenders, for the appellant, Charles King Morris.

Robert E. Cooper, Jr., Attorney General & Reporter; Kyle Hixon, Assistant Attorney General; William H. Cox, District Attorney General; and William Hall, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

## Factual and Procedural Background

The Defendant was indicted on January 18, 2012, for one count of theft of property over $1000 and one count of possession of burglary tools. On April 17, 2012, he pleaded guilty to one count of theft of property over $1000, and the count of possession of burglary tools was dismissed. The trial court sentenced the Defendant to a three-year sentence, suspended, and placed the Defendant on supervised probation. The Defendant subsequently was arrested again on July 17, 2012, for theft of property, and his probation officer filed a probation violation report on July 26, 2012, citing the Defendant's failure to obey the law, failure to report an arrest, and failure to pay probation fees. The following proof was heard at the Defendant's probation revocation hearing on December 10, 2012:

Officer Jason Williams, the Defendant's probation officer, testified that he began supervising the Defendant around May of 2012. Officer Williams filed a violation of probation report because the Defendant had received a new criminal charge, because the Defendant did not report his new charge, and because the Defendant's probation fees were in arrears.

On cross-examination, Officer Williams stated the Defendant had failed to pay $45 of his probation fees and reiterated that the Defendant did not report his new charge. The Defendant was otherwise reporting to the probation office as required. Officer Williams administered a drug test to the Defendant on June 5, 2012, and the test results were negative. The Defendant had applied for social security disability benefits, but was not employed. Officer Williams stated that, had there not been new charges against the Defendant, he would not have filed a violation report against the Defendant.

Joseph McKinley Palmer testified as a witness for the State. Palmer was the owner of McKinley Excavating in Hamilton County. Palmer was sleeping on his property the night of July 16, 2012, when he woke up to a "clinking around." In response, he went outside with a shotgun and witnessed "three guys throwing some aluminum forms[1] over our wall." Palmer proceeded to a nearby alley on the property to confront the men, and when one of the intruders "turned toward him," Palmer fired a "warning fire." All three of the men ran away, and Palmer followed the Defendant to a nearby road. The Defendant stopped running after reaching the median of the road, and Palmer stayed with the Defendant until the police arrived. Palmer had no doubt the Defendant was one of the men on his property.

On cross-examination, Palmer described his property as roughly 250 by 200 feet and surrounded by a ten-foot fence. One section of the fence had been damaged by a tornado,

---

[1] Palmer testified that these aluminum forms were made for use with concrete and were used for construction in buildings and walls. He described them as expensive and having a high resale value.

which created "partial access" to the property, meaning an individual could enter the property by climbing over rubble and the damaged portion of the fence. The fence had a gate, which was closed and locked at the time of the incident. Palmer did not have a security guard on duty at the property, and the security cameras installed on the property did not face where the incident took place. The only other person who may have been on the property the night of the incident was Palmer's girlfriend, but he could not remember if she was staying with him that night.

Palmer clarified that, when he exited his house, he yelled at the intruders before he fired his weapon. After the intruders ran, Palmer entered an alley on the outside of the property, where he witnessed the Defendant loading aluminum forms into a shopping cart. He admitted that the Defendant was never actually inside the fenced area of the property. The lighting in the alley was "decent" because it had "downtown lighting," but Palmer admitted that it was harder to see at midnight, when the incident took place, as opposed to mid-day. Palmer pursued the Defendant from the property until the Defendant stopped running. Palmer did not lose sight of the Defendant at any point during his pursuit.

The Defendant testified on his own behalf. The Defendant stated he walked on a sidewalk near Palmer's property on his way to a store, but he never entered the alley that Palmer described. The Defendant saw two individuals run out of the alley, followed by Palmer, who was "shooting his gun." In response, the Defendant ran from the sidewalk to the median of a road. The Defendant stated he ran when Palmer fired his shotgun because he feared for his life. When approached by Palmer, the Defendant identified to him the individuals who ran from the alley, and he told Palmer he ought to chase them. The Defendant claimed he was neither tired nor winded when he was approached by Palmer because he only had run from the sidewalk to the median. The Defendant described the alley as dark. The Defendant admitted he was one month behind on his probation fees.

On cross-examination, when asked about his previous conviction, the Defendant stated he pled guilty to his April 2012 theft charge because, through no fault of his own, he was in possession of stolen property. The Defendant explained he had been dropped off at a recycling yard that he had been "clean[ing] off," and the property's owner had left some aluminum forms outside. The forms apparently were stolen. Shortly after the Defendant was dropped off, the police arrived, resulting in the Defendant being in possession of the stolen forms. The Defendant also had a robbery charge from 2005, involving a dropped wallet at a party.

The trial court found that the Defendant violated his probation by "picking up new charges, stealing from the concrete company, failing to report the charges to [the] probation office," and that he was "in arrears $45." The trial court then revoked the Defendant's probation and ordered his sentence into execution.

**Analysis**

The Defendant's single issue on appeal is whether the trial court erred when it revoked his probation. The Defendant argues that the trial court abused its discretion because the trial court heard the revocation proceeding prior to the disposition of the Defendant's new charge and because the trial judge did not consider alternatives to reinstating the Defendant's sentence. Alternatively, the Defendant argues that the trial judge did not make sufficient findings to permit appellate review. The State argues that the trial court was within its discretion when it revoked the Defendant's probation and that the trial court's findings were sufficient. We agree with the State.

In a probation revocation proceeding, the State has the burden of proving a probation violation by a preponderance of the evidence. See Tenn. Code Ann. § 40-35-311(e)(1) (2010). If the trial court finds that the Defendant has violated the terms of his or her probation, then it "shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence." Id. The decision to revoke lies within the sound discretion of the trial court. State v. Walker, 307 S.W.3d 260, 263 (Tenn. Crim. App. 2009); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The trial court determines the credibility of witnesses in a probation revocation hearing. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). The trial judge's findings in a probation revocation proceeding carry the weight of a jury verdict. Id.

On appeal, we review a trial court's decision to revoke probation for an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Farrar, 355 S.W.3d 582, 585 (Tenn. Crim. App. 2011). A trial court "abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." Farrar, 355 S.W.3d at 586 (quoting State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010)). "In order for this court to find an abuse of discretion, 'there must be no substantial evidence to support the conclusion of the trial court that a violation of conditions of probation has occurred.'" State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809 (Tenn. Crim. App. Mar. 18, 2013) (quoting Shaffer, 45 S.W.3d at 554).

The Defendant first argues that the trial court should have waited until the Defendant's new charge was resolved before holding the revocation hearing. There is no such requirement under Tennessee law. Indeed, the State's burden of proof in a probation revocation proceeding is preponderance of the evidence. Therefore, the disposition of a new charge does not determine the outcome of a revocation hearing: "a trial judge at a probation revocation hearing is not bound by an acquittal of a criminal offense which occurs . . . after a suspended sentence is granted when it appears that a defendant is guilty of conduct

inconsistent with good citizenship." State v. Delp, 614 S.W.2d 395, 396-97 (Tenn. Crim. App. 1980) (citing Ray v. State, 576 S.W.2d 598, 600 (Tenn. Crim. App. 1978)). Accordingly, even if the Defendant had been acquitted of the new charge before the probation revocation hearing, the trial court retained the authority to revoke the Defendant's probation. Moreover, the trial court clearly accredited Palmer's testimony that the Defendant had engaged in theft or an attempted theft while on probation. Accordingly, the Defendant is entitled to no relief on this basis.

The Defendant also argues that the trial court abused its discretion because the trial court did not consider alternatives to reinstating his sentence prior to revoking his probation. The Defendant has not cited any precedent that requires a trial judge to consider all alternatives to reinstating a sentence before revoking a defendant's probation. We also fail to see how mere consideration of the alternatives would affect the outcome of the defendant's hearing. Furthermore, the evidence in the record supports the trial court's decision. In this case, the record demonstrates that the Defendant was arrested and charged, that he failed to report his new charge to his probation officer, and that he was late paying his probation fees. The record contains sufficient evidence to warrant a finding that the Defendant violated his probation, and, thus, the trial court was within its discretion to revoke the Defendant's probation.

Finally, the Defendant contends that the trial court made insufficient findings for appellate review and asks this Court to remand for further proceedings. Although the trial court's findings were brief, they implicitly accredited the testimony of Officer Williams and Mr. Palmer. As discussed above, the evidence in the record supports the trial court's decision. The Defendant is entitled to no relief on this basis.

## Conclusion

For the reasons set forth above, we affirm the judgment of the trial court.


_____
JEFFREY S. BIVINS, JUDGE

-5-