IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville August 21, 2013

## STATE OF TENNESSEE v. COLBY TERRELL BLACK

**Appeal from the Circuit Court for Giles County**
**Nos. 13274, 13632, 14763      Stella Hargrove, Judge**

**No. M2013-00530-CCA-R3-CD - Filed August 30, 2013**

Appellant, Colby Terrell Black, was serving an effective twelve-year suspended sentence imposed as a result of his 2007, 2008, and 2010 guilty pleas to aggravated assault, two counts of sale of cocaine, and a second aggravated assault, respectively. He was arrested in 2011 for aggravated domestic assault. The trial court held a revocation hearing, after which it revoked appellant's probation and ordered execution of his sentences. He successfully appealed the trial court's order on the basis that the trial court failed to set forth the evidence it relied upon in ordering revocation and did not address the allegation that appellant had committed a new offense. The trial court complied with this court's directive and filed an extensive order detailing the reasons for revocation. Appellant again appeals, claiming that the trial court erred by not considering his mental state at the time of the offense and by failing to find that the preponderance of the evidence supported the trial court's decision to revoke his probation. Upon our review, we discern no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Claudia S. Jack, District Public Defender; and Richard H. Dunavant, Assistant District Public Defender, for the appellant, Colby Terrell Black.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; T. Michel Bottoms, District Attorney General; and Larry Nickell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

In his first appeal, appellant challenged the revocation of his probation, contending that the trial court failed to set forth the reasons for revoking his probation, and the State conceded the issue. *See State v. Colby Terrell Black*, No. M2012-00833-CCA-R3-CD, 2012 WL 5594619, at *1 (Tenn. Crim. App. Nov. 13, 2012). This court remanded the instant case to the trial court for entry of a written order setting forth the reasons for ordering revocation and the evidence it relied upon.

In this first direct appeal, this court summarized the procedural history and underlying facts of this case as follows:

On September 10, 2007, [appellant] pled guilty to aggravated assault in Case No. 13274 and was sentenced to six years, suspended to supervised probation. On September 26, 2008, he pled guilty to two counts of sale of cocaine in Case No. 13632 and was sentenced to concurrent terms of three years, suspended after service of sixty days. On February 22, 2010, he pled guilty to aggravated assault in Case No. 14763 and was sentenced to six years, suspended to supervised probation, to be served consecutively to Case No. 13274. A revocation warrant was filed on September 19, 2011, based on [appellant]'s September 8, 2011 arrest for domestic aggravated assault and his failure to pay probation fees, fines, court costs, and restitution.

At the March 20, 2012 revocation hearing, Tikara Black, [appellant]'s sister-in-law, testified that [appellant] came to her house on September 8, 2011, looking for his brother. When Mrs. Black informed him that his brother was not home, [appellant] became upset because he thought she was lying to him. [Appellant] started "ranting and raving" and "had one of his spells," so Mrs. Black asked him to leave, but he refused. As she was trying to unchain her dog for protection, [appellant] threw a scooter at her, striking her on the shoulder. [Appellant] then grabbed her by her shirt, causing her to fall to the ground. She managed to unleash her dog, and [appellant] left because he was afraid of the dog. Mrs. Black then left to take her sister-in-law home[,] and when she returned, [appellant] was there and had a butcher knife in his hand. He was "screaming and hollering" and trying to get in her car on the passenger side. [Appellant] threatened to stab her, and she left and called the police. When she later returned home, she noticed "a little knife spot" on her dog and

believed that [appellant] had stabbed the dog but said it was not a serious wound.

Eugene Michonski, [appellant]'s probation officer, testified that he filed the probation violation warrant because [appellant] was in arrears on his probation fees. [Appellant] had made eight payments toward his fines and costs in 2008-2009 but then stopped paying when he "got in trouble in Lawrence County for a possession charge and D.U.I. third, and pled guilty to a simple possession and ... D.U.I. second." [Appellant]'s last payment was made on September 6, 2011, when he made a $15 fee payment and a $5 court cost payment in Case No. 13632. [Appellant] provided proof that he was trying to find a job. [Appellant] had been ordered to undergo a mental evaluation, and [appellant]'s mother informed Michonski that [appellant] had been "placed on a couple of strong medications." In response to questioning from the trial court, Michonski said that multiple violation warrants had been filed against [appellant] and that he had two partial revocations.

Darlene Black, [appellant]'s mother, testified that [appellant] suffered from bipolar disorder and schizophrenia and that his diagnoses recently had been confirmed at Centerstone and Middle Tennessee Mental Health Institute. She said that [appellant] had "had spells ever since he was a juvenile in school." When "that incident happened," [appellant] was ordered to undergo a mental evaluation and was prescribed medication that helped him. [Appellant] received treatment as a juvenile but lost his benefits when he became an adult. As a result of not having his medication, [appellant] had "relapse after relapse." Ms. Black said [appellant] had been accepted into a "vocational rehab" program.

[Appellant] testified that he had no memory of the incident involving his sister-in[-]law and acknowledged that he had undergone a mental evaluation while in jail. He said that he heard voices "telling [him] to do stuff," but his medication helped him to not hear the voices. [Appellant] acknowledged that he had "spells" but said he did not harm anyone. He claimed that on the night of "this incident . . . [s]omebody jumped out of the bushes and . . . beat [him] with a baseball bat." He said that he had always paid his probation fees and that the arrearage occurred "when [he] was locked up over a year on violation things." [Appellant] acknowledged that he did better while taking his medications and said that he "blank[s] out" when in jail. He said he was going to attend a school "with counselors . . . [w]here they make me go to Centerstone . . . [and] take my medication and stuff."

In rebuttal, the State recalled [appellant]'s probation officer who testified in detail as to [appellant]'s history of probation violations.

*Id.* at *1-2.

As set forth earlier, this court remanded the case for entry of a written order. The trial court complied with the mandate by filing an extensive order on November 20, 2012. The court first noted that prior to the revocation hearing, it ordered appellant to submit to a mental evaluation. It then held a hearing on March 20, 2012. On remand, the trial court made the following findings:

1. The grounds for the warrant include a new arrest for aggravated domestic assault on September 8, 2011. The Court heard testimony from the alleged victim, Tikara Black, [appellant's] sister-in-law. The Court found Ms. Black to be a very credible witness as she described the physical abuse and threats of violence made by [appellant] at her home. In fact, judging her demeanor, the Court found that Ms. Black held back on giving information that might make things go bad[ly] for [appellant]. She wanted the Court to know and understand that [appellant] had never caused her any problems. Ms. Black testified that she knew [appellant] had "spells[;]" however, this was the first time she had experienced this behavior on his part toward her. She testified that [appellant] left when she unchained her dog. He came back with something in his hands. Ms. Black told law enforcement it was a butcher knife. She testified that it looked like a butcher knife. Ms. Black had just returned to her home and was still in her car. [Appellant] tried to get in her car and threatened to stab her. Ms. Black left and law enforcement was called.

2. The revocation warrant also included a ground for failure to pay fines, fees, restitution[,] and court costs. [Appellant's] probation officer, Eugene Michonski, testified that in 2008 and early 2009[,] [appellant] was really making an effort to find employment and pay. He testified that after [appellant] pled to second offense DUI and simple possession in Lawrence County, he simply stopped caring. Mr. Michonski stated that [appellant] did go to the Career Center, applied for employment[,] and was trying to get a job. His last payment was September 6, 2011. It appears to the Court that his family, and specifically his mother, was paying for him.

3.      [Appellant's] mother, Darlene Black, testified that [appellant] suffers from a bipolar disorder and schizophrenia. She testified that efforts to get help for him have failed[ ] but agreed that medication prescribed during the last mental evaluation has helped. She testified that Vocational Rehabilitation Services will work with him. Ms. Black testified that "felonies cannot get a job." This Court has experienced many defendants with felony records securing gainful employment in Giles County.

4.      [Appellant] testified and denied any memory of the incidents described by Tikara Black. He testified that voices tell him to do things – a little bit of everything. [Appellant] testified that he does have spells and then said he did not have spells. He testified that he would never harm anyone. He has pled to aggravated assault reduced from attempted first degree murder as well as a second aggravated assault. On cross-examination[,] [appellant] named himself as the victim in the incident described by Tikara Black, claiming that someone jumped from the bushes and beat him with a bat. He asked the State to reveal what bruises Ms. Black had, asking: "You got [sic] pictures?"

5.      The Court finds that [appellant] was able to understand the State's questions concerning his prior history, his DUI, drug possession, felony assaults[,] and sales of cocaine. However, he refused to answer specific questions relative to the offenses and his pleas of guilty, stating that they had nothing to do with the hearing.

6.      The Court listened carefully to [appellant's] testimony. He was particularly defensive on cross-examination. The court was impressed that [appellant] used the following words: "arrearage, schooling, workforce, vocational rehabilitation, and proper treatment." These are [appellant's] own words.

The trial court ruled that the State failed to carry its burden of proof with regard to appellant's failure to pay. However, the trial court clearly concluded that appellant had committed a new offense while on probation. The trial court further stated that it considered: (1) the victim's testimony and found her to be a "very credible witness"; (2) appellant's testimony and found him not credible; (3) appellant's history of failing to conform to the law while on probation; (4) appellant's continuing to commit violent offenses; (5) appellant's ability to appreciate right from wrong; (6) appellant's lack of truthfulness with the court with regard to his propensity toward violence; and (7) his continuing to commit criminal offenses

while on felony probation. Based on these findings, the trial court again revoked appellant's probation.

## II. Analysis

In this second appeal, appellant claims that the trial court erred by not considering his mental state as mitigating evidence when it revoked his probation and by not specifically determining that he had violated the terms of his probation by a preponderance of the evidence.

### 1. Standard of Review

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). In determining whether to revoke probation, it is not necessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the court is granted the authority to revoke the probation and suspension of sentence. Tenn. Code Ann. § 40-35-311(e)(1) (2010 & Supp. 2012). The appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)).

### 2. Failure to Consider Appellant's Mental State

Although the trial court did not specifically list appellant's mental state as one of the factors it considered in revoking his probation, it clearly made findings in this regard. The trial court noted the mental evaluation it had ordered, appellant's testimony about hearing voices, and his mother's testimony about his mental conditions. It stated that appellant understood the State's questions and refused to answer questions that related to his criminal offenses and guilty pleas. The court was also impressed with appellant's vocabulary at the revocation hearing.

At a probation revocation hearing, an appellant is entitled to the "'opportunity to show that [the defendant] did not violate the conditions [of probation], [or] that there was a

justifiable excuse for any violation or that revocation is not the appropriate disposition.'" *State v. Marsha Karen Yates*, No. E2003-01900-CCA-R3-CD, 2004 WL 1467636, at *4 (Tenn. Crim. App. June 30, 2004) (quoting *Black v. Romano*, 471 U.S. 606, 612 (1985)). Based on the foregoing, we conclude that the trial court properly considered the evidence concerning appellant's mental state. The trial court did not abuse its discretion with regard to this claim of error.

3. Failure to Make a Finding Concerning Preponderance of the Evidence

Notably, appellant does not contend that the evidence preponderates against the trial court's decision to revoke his probation. He only assigns error to the trial court's failure to state that the preponderance of the evidence supported the revocation.

The trial court did not specifically state that it found by a preponderance of the evidence that appellant had violated the terms of his probation. Rather, the court reasoned that the State had carried its burden of proof in that regard. We note that pursuant to the 1989 Sentencing Act, the legislature added a burden of proof to be met in probation revocation cases: "'If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence. . . .'" *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011) (quoting Tenn. Code Ann. § 40-35-311(e)(1)). By concluding that the State carried its burden of proof, the trial court implicitly found that the preponderance of the evidence supported revocation of appellant's probation.

The cases upon which appellant relies offer him no support. In *State v. Lontrell Williams*, this court reversed the trial court's revocation order because it found probable cause, not by a preponderance of the evidence, that appellant therein committed new offenses. No. W2009-00275-CCA-R3-CD, 2009 WL 3518171, at *3 (Tenn. Crim. App. Oct. 30, 2009). In *State v. Calvin Austin*, this court reversed an order of revocation because the trial court based the revocation on the mere fact of an arrest and did not conduct an evidentiary hearing to determine by a preponderance of the evidence whether he had committed a new offense. No. W2005-02592-CCA-R3-CD, 2006 WL 4555240, at *2 (Tenn. Crim. App. Aug. 9, 2006). Neither of these cases stands for the proposition that the trial court must adhere to the formality of reciting precise wording, and we decline to graft such a requirement on them. It is clear from the record that the trial court determined that the State had met its burden of proof, which is by a preponderance of the evidence. Appellant is not entitled to relief on this claim.

**CONCLUSION**

Based upon the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE