FILED

03/01/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2018

## STATE OF TENNESSEE v. JOE T. BROOKS

### Appeal from the Hamilton County Criminal Court
No. 301045     Don W. Poole, Judge

### No.  E2018-00445-CCA-R3-CD

The Defendant, Joe T. Brooks, appeals as of right, from the Hamilton County Criminal Court's revocation of his probationary sentence and order of nine months' incarceration for his conviction of reckless endangerment.  The Defendant contends that the trial court abused its discretion by ordering him to serve nine months of confinement before being returned to supervised probation.  Following our review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Steven E. Smith, District Public Defender; and Jay A. Perry, Assistant District Public Defender, for the appellant, Joe T. Brooks.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Neal Pinkston, District Attorney General; and Andrew Coyle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On May 25, 2017, the Defendant pled guilty to possession of a deadly weapon in count one, reckless endangerment in count two, and simple possession of marijuana in count three.  Tenn. Code Ann. §§ 39-13-10, -17-418, -17-1307.  The trial court sentenced the Defendant to a term of two years' confinement for count one and eleven months and twenty-nine days' confinement for count three, to be served concurrently.  The trial court ordered the Defendant to two years of supervised probation for count two, to be served

consecutively to the sentences for counts one and three. The Defendant was granted determinate release on August 10, 2017, and began probation on August 14, 2017.

On October 6, 2017, a probation violation warrant was issued for the Defendant based upon multiple alleged violations. On February 18, 2018, a probation revocation hearing was held.

At the hearing, David Sharrett testified that he worked as a probation and parole officer for the Tennessee Department of Correction and that he was assigned to the "Chattanooga Community Impact Program." According to Mr. Sharrett, the program supervised eighteen to twenty-four-year-old offenders who must have had a "charge with an aggravated component, a drug charge[,] or a history of drug charges" to be eligible for the program. Mr. Sharrett said that the Defendant participated in this program and that he was the Defendant's supervisor. Mr. Sharrett's supervision of the Defendant began on approximately September 20, 2017.

Mr. Sharrett explained that the Defendant was released from custody on determinate release in August 2017 and that the Defendant would have signed paperwork that discussed the rules of determinate release. At the Defendant's initial intake following his release, he tested positive for marijuana. Mr. Sharrett testified that the Defendant also failed a drug screen by testing positive for marijuana in September and that he failed to report to the probation office on October 5, 2017.

On October 6, 2017, Mr. Sharrett and his partner went to the Defendant's residence and placed a GPS monitor on his ankle, as required by the Chattanooga Community Impact Program. Mr. Sharrett said that when he placed the monitor on the Defendant, he explained how to charge and take care of the device. Mr. Sharrett also explained to the Defendant that tampering with the device would result in a new misdemeanor charge and that if the device could not be recovered, the Defendant would receive a theft charge. Mr. Sharrett testified that the Defendant wore his GPS monitor for only four hours before removing it. Mr. Sharrett explained that he received a call around noon on October 6, 2017, from the Defendant, who asked "why the cops were looking for" him. Mr. Sharrett did not know, but he attempted to calm the Defendant and encouraged him not to remove the GPS monitor. However, he received information that the Defendant had tampered with the GPS monitor at 1:30 p.m. Mr. Sharrett and his partner began looking for the Defendant, but they were unable to locate him. Mr. Sharrett did find the GPS monitor, with the band clearly cut, in a vehicle located in the front yard of the Defendant's residence. Mr. Sharrett took out a vandalism warrant for the Defendant's cutting off the monitor and "submitted the violation of probation." Approximately five days later, the Defendant was located through the efforts of "a group of special agents" whose "job is to hunt down people who have absconded supervision." The Defendant was taken into custody.

Furthermore, Mr. Sharrett explained that the Chattanooga Police Department kept a record of all known gang members in the area and that the Defendant was a "validated member of the Rollin 100 Crips" gang.

The Defendant testified that he began probation following his determinate release from incarceration. He stated that he knew he was prohibited from using marijuana but admitted to failing drug screens because he used the drug. The Defendant failed to meet with Mr. Sharrett on October 5, 2017, but he explained that this was because he had to take his son to the hospital. The Defendant told Mr. Sharrett this when Mr. Sharrett arrived and placed the GPS monitor on the Defendant on October 6. When asked what happened next, the Defendant explained that shortly after Mr. Sharrett put the monitor on him, a police officer arrived at the Defendant's house with a warrant for his arrest. The Defendant stated that he "didn't stick around to find out" what the warrant was regarding, and he cut off the GPS monitor. The Defendant confirmed that officers eventually found him at the home of his then pregnant girlfriend.

The Defendant explained that he wished to be placed on probation so that he could take care of his girlfriend and their newborn baby. He testified that his girlfriend was assaulted in January 2018 and that this resulted in her delivering the baby early. The Defendant said that their "child was at the hospital in an incubator[.]" He testified that his child had undergone "at least three to four surgeries" since birth and that he needed to be able to care for the baby.

The Defendant also testified that he suffered from mental health issues. He explained that he had been diagnosed and prescribed medication "since the second grade[.]" The Defendant asserted that he was no longer a member of a gang. The Defendant also affirmed that he would "do what [he] need[ed] to do as far as being on probation[.]"

On cross-examination, the Defendant admitted that on October 6, 2017, he fled from the police and a few hours later removed his GPS monitor. The Defendant testified that he went to his girlfriend's home, where he remained until October 10, 2017. That night, he took his girlfriend to the emergency room, and he was arrested the following day. The Defendant also admitted to smoking marijuana every day while incarcerated and confirmed that he had used marijuana while released on probation.

At the conclusion of the hearing, the trial court found that the Defendant violated the terms of his probation by a preponderance of the evidence. The trial court found that the Defendant violated the terms by testing positive for marijuana on September 25, 2017, and by cutting off the GPS monitor on October 6, 2017. The trial court found the Defendant's temporary disappearance a violation as well. The trial court reasoned that the Defendant "was on determinate release" and that he "should know what to do and not to do" on determinate release and ordered the Defendant's two-year sentence for counts

one and three into execution. Regarding count two's two-year sentence, the trial court ordered the Defendant to serve eleven months and twenty-nine days in the workhouse consecutively to the remaining time on the determinate release sentence. The trial court later reduced this to nine months to serve in the workhouse following the remainder of the determinate release sentence. The Defendant filed a timely notice of appeal.

## ANALYSIS

On appeal, the Defendant argues that the trial court abused its discretion in ordering the Defendant to serve nine months' incarceration before being placed on supervised probation. Specifically, the Defendant argues that this was his first probation violation and serving "the balance of the sentence that he had been released on determinate release was sufficient punishment given his age, mental health issues, and lack of any other criminal convictions." The Defendant posited that an alternative to incarceration should have been given regarding the conviction for count two. The State responds that the trial court exercised proper discretion in ordering the Defendant to serve nine months in custody. We agree with the State.

Upon finding by a preponderance of the evidence that a defendant has violated the conditions of his release, the trial court "shall have the right . . . to revoke the probation and suspension of sentence" and either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. § 40-35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Gear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6. S.W.3d 235, 242 (Tenn. 1999)).

Here, the trial court reasoned that there was "overwhelming evidence" the Defendant violated the terms of his probation. The trial court found that the Defendant had drug use violations and cut off his GPS monitor. This court has repeatedly held that

-4-

"an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). The trial court properly considered the evidence presented at the revocation hearing and the facts of the case before ordering the Defendant to serve a portion of his sentence. Accordingly, the Defendant is not entitled to relief regarding this issue.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE