FILED

08/06/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 1, 2021

**STATE OF TENNESSEE v. JEREMY W. ALEXANDER**

**Appeal from the Circuit Court for Henderson County**
**No. 18-222-3      Kyle C. Atkins, Judge**

_____

**No. W2020-00953-CCA-R3-CD**

_____

The Defendant, Jeremy W. Alexander, appeals as of right from the Henderson County Circuit Court's revocation of his probation and reinstatement of his effective twenty-seven-year sentence in the Department of Correction for his three guilty-pleaded convictions for sale of 0.5 grams or more of methamphetamine. On appeal, the Defendant contends that the trial court abused its discretion by fully revoking his sentence and that an alternative to full incarceration should have been imposed to allow him to seek treatment for his methamphetamine addiction. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Jeremy W. Alexander.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Chadwick R. Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On October 1, 2018, a Henderson County grand jury indicted the Defendant for three counts of sale of 0.5 grams or more of methamphetamine and, as an alternate theory of the same crime, for three counts of delivery of 0.5 grams or more of methamphetamine based upon three separate transactions occurring on September 23, September 26, and September 30 of 2016. See Tenn. Code Ann. § 39-17-434. Following his arrest, the

Defendant was released after he posted a $25,000 bond. Thereafter, on April 18, 2019, the Defendant entered an open guilty plea to all six counts, with the agreement that the respective sale and delivery counts would merge into one Class B felony conviction for each of the three transactions. See Tenn. Code Ann. § 39-17-417 (providing classification for the offense).

A sentencing hearing was held on August 15, 2019. At the hearing, the trial court sentenced the Defendant to nine years as a Range I, standard offender for each of his three Class B felonies. The trial court ordered that the sentences were to be served consecutively to one another, resulting in an effective twenty-seven-year sentence. The trial court further ordered the Defendant to serve 120 days before being placed on probation to be supervised by community corrections.[1] The Defendant was released from the Henderson County Jail "on or about" October 16, 2019.

Thereafter, in November 2019, Madison County Community Corrections ("MCCC") Officer Blake Mayfield filed a violation affidavit and warrant against the Defendant. In the affidavit, it was alleged that the Defendant violated the terms of his sentence in the following ways: (1) failed to obey the law by committing the offense of falsifying a drug screen in the MCCC office on November 20, 2019, for which the Defendant was arrested in the office that same day; (2) failure to remain drug free due to a positive drug screen on November 20, 2019, including an admission from the Defendant on that occasion that he had used methamphetamine; and (3) failure to complete alcohol and drug assessment. The trial court signed the warrant on November 25, 2019.

At the outset of the revocation hearing that took place on June 12, 2020, defense counsel noted that the Defendant was admitting to the violations about a new charge and drug use on November 20, 2019, but that the Defendant was not admitting to the underlying facts supporting the charge of falsifying a drug screen. The Defendant then called his mother, Patsy Alexander, to testify.

Ms. Alexander acknowledged that her son suffered from a "long history" of methamphetamine addiction. Ms. Alexander indicated that the Defendant had been working at a furniture store following his release on probation in this case and that, typically, he stayed employed when not in jail. She further indicated that the Defendant had graduated "with honors" from Nashville Auto Diesel College.

According to Ms. Alexander, about ten years ago, the Defendant tried inpatient drug rehabilitation treatment for twenty-eight days, but he was unable to stay off drugs thereafter. Ms. Alexander believed the Defendant needed more intensive treatment, and

---

[1] Neither a transcript of the guilty plea hearing nor the sentencing hearing is included in the record on appeal.

she wanted him to get some help. Though Ms. Alexander acknowledged that the Defendant had been in jail multiple times, she submitted that his being held in jail had not helped him with his drug problem. She stated her belief that the Defendant wanted to get better, that he could do so with the proper treatment for his drug addiction, and that he was "a good person" when not on drugs.

On cross-examination, Ms. Alexander acknowledged that the Defendant had sold drugs before, but she asserted that he deserved "a chance" to change. She was aware of the Defendant's new charge for falsifying a drug screen and agreed that the Defendant's new charge showed a lack of acceptance and responsibility for his drug use.

The State then called the Defendant's supervising officer. Mr. Mayfield testified about the Defendant's supervision history, which lasted for only about a month starting from the Defendant's release from jail in October 2019 until his arrest at the MCCC office in November 2019. According to Mr. Mayfield, the Defendant's supervision was "rocky." Mr. Mayfield characterized the Defendant as respectful, but he was concerned because the Defendant's behavior was suspicious. Mr. Mayfield explained that the Defendant would call to reschedule appointments on the day of the appointment, which was "a red flag" to Officer Mayfield.

Officer Mayfield said that he was on "high alert" on November 20, 2019, the day of the Defendant's appointment, because it had already been rescheduled. They were scheduled to complete the Defendant's alcohol and drug assessment that day, but when the Defendant arrived at the office, he was told he first needed to take a drug screen. Officer Mayfield explained the drug screen procedure, stating that it involved having the individual go into a mirrored bathroom and that the officer's job was to observe to make sure that the screen was legitimate. According to Officer Mayfield, during the procedure, he saw that the Defendant was wearing a device called a "whizzinator," which was a fake penis that contained someone else's urine. Officer Mayfield told the Defendant to remove the device, and after the Defendant complied, they proceeded with a legitimate drug screen. The drug screen was positive for methamphetamine, and Officer Mayfield indicated that the Defendant admitted that he had used. The Defendant was thereafter arrested at the MCCC office for falsifying a drug screen.

In making a concluding argument, defense counsel noted that though the Defendant had sold drugs in the past, the Defendant's offenses were non-violent in nature. Defense counsel asserted that drug offenders did not receive adequate help while in jail, that jail was not an effective deterrent to others in such circumstances, and that the Defendant did not belong in jail for an additional twenty-five years. Defense counsel requested for the trial court to impose partial revocation of the Defendant's sentence and for the trial court to order the Defendant to enter a rehabilitation program upon his release to deal with his methamphetamine addiction.

The State argued for full revocation, noting that the Defendant had sold over ten grams of methamphetamine on these three occasions. The State further noted that the Defendant had a prior felony conviction for drugs and that the Defendant tested positive for methamphetamine use on his sentencing date, which formed the basis for the "shock incarceration" initially ordered by the trial court.

Following the conclusion of the proof and arguments, the trial court fully revoked the Defendant's probation, finding that the Defendant was "in violation of his probation in a substantial way, based upon both his admission and a preponderance of the evidence." The trial court then noted additional information regarding the Defendant's supervision history, indicating that originally in November 2018, before the Defendant entered his open guilty plea, the Defendant was allowed out on bond and given a curfew and ordered to report for drug testing. According to the trial court, when the Defendant failed to report for testing as ordered, his bond was revoked. The trial court recalled that the Defendant was later placed on bond again, this time including the additional requirement that he wear an ankle monitor. The trial court believed that the Defendant also "didn't make that bond." The trial court also noted the Defendant's positive drug screen at the sentencing hearing, which was almost four months after his guilty plea was accepted and that despite his failed drug screen, the Defendant was given another chance on release. The trial court commented that there existed "a connotation to what [the Defendant was] charged with that makes it a violent offense because of what it does to the rest of society and people who are selling this poison in [the] community."

Accordingly, the Defendant was ordered to serve the balance of his twenty-seven-year sentence in confinement. The Defendant filed a timely notice of appeal.

ANALYSIS

The Defendant contends that the trial court abused its discretion by fully revoking his twenty-seven-year sentence for non-violent drug crimes and that the trial court should have imposed some alternative to full revocation that included treatment at a substance abuse rehabilitation program to treat his methamphetamine addiction. The State responds that the trial court properly exercised its discretion by ordering the Defendant to serve the balance of his sentence in confinement.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e). Furthermore, the decision

to revoke probation is in the sound discretion of the trial judge and will not be overturned absent an abuse of the discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011).

We note that following the Defendant's release from the jail, he was placed on probation to be supervised by community corrections. Though the Defendant was never transferred to Community Corrections Program as an eligible offender as defined in Tennessee Code Annotated 40-36-106(a), the Defendant was being supervised by a community corrections officer at the time of the violation. Accordingly, we feel constrained to observe that the same principles that apply in the revocation of probation also apply in the revocation of a community corrections sentence. Harkins, 811 S.W.2d at 83; see also Tenn. Code Ann. § 40-36-106(e)(4).

Here, Officer Mayfield testified that the Defendant admitted to methamphetamine use following his positive drug screen at the MCCC office on November 20, 2019. Moreover, the Defendant, through his attorney, admitted to the drug use resulting in the positive drug screen on November 20, 2019, though the Defendant declined to admit to the underlying facts supporting the new charge of falsifying a drug screen. As this court has recognized, "[a d]efendant's admission that he violated the terms of his probation, alone, constitutes substantial evidence to support the revocation of probation." State v. Ross Pruitt, No. E2015-01494-CCA-R3-CD, 2016 WL 3342356, at *4 (Tenn. Crim. App. June 8, 2016) (citing State v. Christopher Nathaniel Richardson, No. M2006-01060-CCA-R3-CD, 2007 WL 776876, at *4 (Tenn. Crim. App. Mar. 15, 2007)); see State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999).

In order to establish a violation of a suspended sentence based on the commission of a new offense, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law. See State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010) (noting that proof of a conviction is not necessary). The State "must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" State v. Jason L. Holley, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App. Oct. 25, 2005) (quoting Harkins, 811 S.W.2d at 83 n.3).

Officer Mayfield's testimony regarding the Defendant's use of a "whizzinator," a device containing someone else's urine, in the MCCC office was sufficient to establish that

the Defendant intended to falsify a drug screen. See Tenn. Code Ann. § 39-17-437. Upon proper screening, the Defendant tested positive for methamphetamine. This court has previously concluded that an officer's testimony about the facts surrounding the arrest used as the basis for the violation "constituted substantial evidence" and was "sufficient to support the trial court's [revocation of a suspended sentence]." State v. Jeremy Bo Eaker, No. M2013-01639-CCA-R3-CD, 2014 WL 546348, at *5 (Tenn. Crim. App. Feb. 11, 2014) (quoting State v. Chris Allen Dodson, M2005-01776-CCA-R3-CD, 2006 WL 1097497, at *3 (Tenn. Crim. App. Mar. 31, 2006)) (concluding that officer's testimony "was straight-forward: upon executing a traffic stop, he found [the defendant] in possession of drug paraphernalia and a white powder, which he stated, based upon his experience as a law enforcement officer and as a drug task force agent, appeared to be methamphetamine[,]" and provided a sufficient basis for revoking probation).

The Defendant's main complaint appears to be that the trial court acted too harshly given the length of the Defendant's twenty-seven-year sentence that was revoked in full. The effective length of the Defendant's sentence is not before us for review. Moreover, this court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." State v. Dannie Brumfield, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016) (quoting State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). The trial court noted that it had already revoked the Defendant's bond on one occasion due to drug use and that the Defendant had subsequently tested positive at the sentencing hearing, for which he received a period of shock incarceration. The Defendant's probationary period with Officer Mayfield lasted only a month before the Defendant once more tested positive for methamphetamine. Officer Mayfield stated that the Defendant had engaged in suspicious behavior by calling to reschedule appointments on the day of the appointment. We cannot say that the trial court abused its discretion by concluding that the Defendant's multiple violations of the terms of his release called for the service of his sentence in a correctional facility rather than in the community.

The trial court was within its discretion to determine that the Defendant violated the conditions of his probation by a preponderance of the evidence. Thereafter, it was within the trial court's authority to order the Defendant to serve the balance of his previously imposed twenty-seven-year sentence in confinement upon revoking the Defendant's probation. See Tenn. Code Ann. §§ 40-35-310, -311(e); see also State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE